United States District Court
For the Northern District of California

1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8
                                              No. C 08-1485 MHP
9    SHAWNA WILKINS-JONES

10              Plaintiff,                     **MEMORANDUM & ORDER**

11        v.                                   **Re: Cross-Motions for Summary Judgment,
                                              or in the Alternative, Partial Summary**
12   COUNTY OF ALAMEDA,                        **Judgment; Plaintiff's Motion to Strike**

13              Defendant.
     _____/
14

15          Plaintiff filed suit against defendant, County of Alameda ("County"), alleging violations of

16   Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act

17   ("Section 504"), the Unruh Civil Rights Act ("Unruh Act"), the California Disabled Persons Act

18   ("CDPA") and Cal. Govt. Code § 11135.  On May 28, 2010, the court dismissed plaintiff's claim for

19   injunctive relief.  Consequently, plaintiff's remaining action is one for personal damages.  Before the

20   court are plaintiff's and defendant's cross-motions for summary judgment, and plaintiff's motion to

21   strike.  Having considered the parties' submissions and arguments, the court enters the following

22   memoranda.

23

24   BACKGROUND

25          Unless otherwise noted, the following facts are taken from the Joint Statement of Undisputed

26   Facts ("JSUF"). Docket No. 134.  Plaintiff Shawna Wilkins-Jones is a 44-year old individual

27   diagnosed with systemic lupus and rheumatoid arthritis.  She has had both hips and her right knee

28   surgically replaced, and her hands have become deformed due to rheumatoid arthritis.  Plaintiff

1   experiences some difficulty walking, getting out of chairs, and going up and down stairs. Although

2   plaintiff has had mobility issues for several years and walks with a slower gait than normal, her

3   doctor has never prescribed and plaintiff has never asked for a mobility device, such as a wheelchair

4   or cane. According to plaintiff's rheumatologist, she is "semi-ambulatory," which he defines as

5   having "impaired mobility." Plaintiff takes several medications to control the symptoms of both her

6   diagnoses, including Imuran, Prednisone, Plaquenil, Soma and Vicodin.

7       On April 13, 2007, the California Highway Patrol (CHP) stopped Wilkins-Jones for speeding

8   on Interstate 580 in Oakland, CA. At the time, her driver's license was suspended due to a previous

9   speeding incident, and there was an outstanding warrant for her arrest. Pursuant to the warrant, the

10  CHP officer arrested plaintiff and transported her to the Santa Rita Jail ("Santa Rita") operated by

11  defendant. Upon arrival at Santa Rita, the CHP officer completed paperwork at the intake counter

12  attached to the glass enclosure of the Intake Office while plaintiff stood back and observed. A jail

13  employee behind the glass enclosure requested plaintiff's valuables. Plaintiff complied and signed

14  for her valuables using the intake counter. At this time, plaintiff informed the jail employee behind

15  the intake counter that she needed to take her medication, and the employee informed plaintiff that

16  she would have the opportunity see a nurse as part of the intake process. Subsequently, an Alameda

17  County Sheriff's deputy escorted plaintiff to a non-accessible holding cell where she remained for

18  several hours prior to being fingerprinted and photographed. After being fingerprinted and

19  photographed, plaintiff was then moved to a communal, non-accessible holding cell with other

20  arrestees. Plaintiff alleges that she had difficulty accessing the benches and toilets in these areas and

21  that she had to receive assistance from other arrestees in order to access the facilities.

22      At some point later that same day, plaintiff and a number of other new inmates were removed

23  from the communal holding cell in preparation to see Nurse Brown of Prison Health Services

24  ("PHS") for evaluation. Plaintiff was evaluated by Nurse Brown between approximately 5:00 p.m.

25  and 6:00 p.m., but plaintiff did not at this time inform Nurse Brown that she was having any

26  difficulty sitting in the holding cell or that she required the use of a wheelchair. Nor did plaintiff ask

27  to use an accessible toilet with grab bars. Plaintiff did inform Nurse Brown that she had systemic

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  lupus, rheumatoid arthritis and joint replacements, and that she had not taken her medications since

2  being arrested.  Nurse Brown gave plaintiff a prescription for Darvocet within an hour of seeing her,

3  and signed a "Details Office Special Requests" form requesting a lower tier, bottom bunk, extra

4  blanket and extra mattress for plaintiff.  Nurse Brown also noted in writing that plaintiff would have

5  difficulty using handrails and stairs.  Nurse Brown did not complete the "Visual Observation"

6  portion of plaintiff's intake/screening form nor did she enter a booking date, booking time or enter

7  whether plaintiff was "medically acceptable for intake."  Nurse Brown did not sign the form, but she

8  did check "yes" to the question, "is the arrestee taking any prescription medications?", and "yes" to

9  indicate that plaintiff had an "Injury; Illness or Contagious Disease".

10  Ultimately, plaintiff was held in the intake area for 32 hours before she was transported to

11  Housing Unit 25 at Santa Rita.  She was formally booked into Unit 25 at 6:39 p.m. on April 14,

12  2007, and per Nurse Brown's instruction she was assigned to a lower bunk bed on the lower tier of

13  the unit.  After plaintiff arrived at Unit 25, she took a shower in a non-accessible shower stall and

14  told the deputy in charge that she did not feel well and needed her medicine.  As in the intake

15  holding cell, plaintiff had difficulty lowering herself to and standing up from the benches.

16  On April 15, 2007, plaintiff submitted an "Inmate Message Request" to jail authorities from

17  her cell in Unit 25 stating, "I have systemic lupus and [rheumatoid arthritis].  Haven't had meds for

18  3 days.  In very bad pain not doing well at all."  Early on Monday, April 16, 2008, plaintiff saw

19  medical personnel, told medical personnel about her medication and received Prednisone for the first

20  time.  She did not at that time inform medical personnel that she needed a wheelchair or access to

21  accessible facilities.

22  Later that morning, buses arrived to transport arrestees to the Wiley Manuel Courthouse

23  ("Courthouse").  Plaintiff alleges that she was transported from Santa Rita to the Courthouse in a

24  non-accessible bus. Docket No. 76 (Wilkins-Jones Decl.) ¶ 8.  In order to access the Courthouse,

25  arrestees are first taken to the Glenn Dyer Jail and escorted by sheriff's deputies through an

26  underground tunnel to holding cells located behind the Courthouse.  Wilkins-Jones Decl. ¶ 9.

27  Arrestees encounter some stairs on the way down to the underground tunnel.  Plaintiff had difficulty

28

1  on these stairs, but she did not ask sheriff's deputies to use the available elevator instead of the

2  stairs.

3         After arriving at the Courthouse, plaintiff was placed in a non-accessible holding cell where

4  she waited for the entire day without going before a judge.  At the end of the day, plaintiff and other

5  inmates were transported from the Courthouse back to Santa Rita in an non-accessible bus.  Upon

6  arrival at Santa Rita that evening, plaintiff walked back to her housing unit without the assistance of

7  a wheelchair, and she received Plaquenil, Imuran and Darvocet before going to sleep.

8         On April 17, 2007, plaintiff, along with other inmates, was once again transported by non-

9  accessible bus to the Courthouse and entered the Courthouse through the underground tunnel

10 connecting the Glenn Dyer Jail to the Courthouse.  Once again, plaintiff waited all day in a non-

11 accessible holding cell located behind the Courthouse, but was not called before a judge.  Plaintiff

12 returned to Santa Rita Jail that evening, and she was released from custody very early the following

13 morning on Wednesday, April 18, 2007.

14        On March 17, 2008, plaintiff filed this action against the County contending that the

15 County's detention facilities violate the ADA and other disability laws and seeking injunctive and

16 monetary relief.  Specifically, she alleges that during her time in custody she was made to use non-

17 accessible facilities, denied her medication, denied the use of a mobility device and encountered

18 several architectural barriers that violated federal and state standards.  On May 28, 2010, the court

19 dismissed plaintiff's prayer for injunctive relief due to a lack of standing.  Consequently, plaintiff's

20 remaining action is for monetary relief.

21

22 LEGAL STANDARD

23        Summary judgment may be granted only when, drawing all inferences and resolving all

24 doubts in favor of the non-moving party, there are no genuine issues of material fact, and the moving

25 party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see generally Anderson v.*

26 *Liberty Lobby, Inc.*, 477 U.S. 242, 247-55 (1986).  A fact is "material" if it may affect the outcome

27 of the proceedings, and an issue of material fact is "genuine" if the evidence is such that a

28

4

reasonable jury could return a verdict for the non-moving party. *Id.* at 248.  The court may not make credibility determinations. *Id.* at 255.  The moving party bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 250.

DISCUSSION

The court first addresses defendant's motion for summary judgment as to plaintiff's federal claims, then considers defendant's motion as to plaintiff's state law claims.  The court grants partial summary judgment in favor of defendant as to plaintiff's federal claims, state Unruh Act claim, and state section 11135 claim, and denies summary judgment as to plaintiff's CDPA claim.  The court next considers plaintiff's motion for summary judgment.  Plaintiff's motion is granted in part in favor of defendant and denied in part.

I.    Defendant's Motion

Defendant argues that summary judgment as to plaintiff's federal claims is appropriate because even if plaintiff could establish a bare violation of the statutes on the facts, plaintiff's evidence fails to support a requisite finding of intentional discrimination.

A.    ADA and Rehab Act

Title II of the ADA states: "No qualified individual with a disability shall, by reason, of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by an such entity." 42 U.S.C. § 12132. The ADA's proscription against such discrimination was modeled after Section 504 of the Rehabilitation Act which states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or

1   be subjected to discrimination under any program or activity receiving Federal financial assistance."

2   29 U.S.C. § 794(a).

3          The standard applied in determining a section 504 violation is identical to that applied in

4   determining an ADA violation, except that in the former instance the public entity must also be a

5   recipient of federal funds.  The parties do not dispute that defendant is a recipient of federal funds.

6   Accordingly, a violation of the ADA here will constitute a violation of section 504, and the court

7   considers these claims together. *Pierce v. County of Orange*, 526 F.3d 1190, 1216 n. 27 (9th Cir.

8   2008); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001).

9          An ADA violation is established where a plaintiff proves that: "(1) he is a 'qualified

10  individual with a disability'; (2) he was either excluded from participation in or denied the benefits

11  of a public entity's services, programs, or activities, or was otherwise discriminated against by the

12  public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his

13  disability." *Duvall*, 260 F.3d at 1135 (citing *Weinreich v. Los Angeles County Metropolitan Transp.*

14  *Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).  In a disability action seeking monetary relief, a plaintiff

15  must additionally prove intentional discrimination as determined by the "deliberate indifference"

16  standard. *Duvall*, 260 F.3d at 1138.  "Deliberate indifference requires both knowledge that a harm to

17  a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at

18  1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).  In this case, even if plaintiff can

19  prove an ADA violation, she cannot recover damages absent a showing of deliberate indifference.

20  The court considers whether plaintiff has met her burden of adducing evidence from which the trier

21  of fact could reasonably find in her favor.

22              1.    <u>Knowledge</u>

23          "When the plaintiff has alerted the public entity to his need for accommodation (or where the

24  need for accommodation is obvious, or required by statute or regulation), the public entity is on

25  notice that an accommodation is required, and the plaintiff has satisfied the first element of the

26  deliberate indifference test." *Id*.  Defendant asserts that even if plaintiff was entitled to receive

27  reasonable accommodation for her disability and even if she was denied such benefits by reason of

28

6

United States District Court

For the Northern District of California

1  her disability, the County is absolved of liability because its staff did not have adequate knowledge

2  of plaintiff's specific needs.  Specifically, defendant argues that since plaintiff did not adequately

3  inform the proper medical staff of her needs and since the scope of plaintiff's needs was not obvious,

4  the County cannot be charged with having had "knowledge that a harm to a federally protected right

5  [was] substantially likely" as a matter of law.  *Id.*; Docket No. 133 (Defendant's Opposition Memo.

6  ("Opp. Memo.")) at 24.

7       Defendant points out, and plaintiff does not dispute, that while plaintiff notified the intake

8  nurse that she suffered from lupus and rheumatoid arthritis upon arrival at the Santa Rita facility, she

9  did not inform the nurse that she needed a wheelchair, she did not request to use any other mobility

10  device and she did not request accommodation in accessible facilities. JSUF ¶ 46-47.  Defendant

11  also asserts that plaintiff's need for accommodation was less than obvious to the staff.  As a result,

12  the staff attempted to reasonably accommodate plaintiff based on the knowledge that staff

13  reasonably possessed during plaintiff's five days in custody.  To that end, defendant contends that

14  although plaintiff lagged behind her group and although plaintiff's hands were disfigured, plaintiff

15  was able to get to all places she needed to go and was able to make use of all the facilities.

16       Plaintiff asserts that her notification of her need for reasonable accommodation was express.

17  In support of this assertion, plaintiff proffers evidence that on two separate occasions, she asked

18  sheriff's deputies for the use of a wheelchair and that these requests were denied on both occasions.

19  Herrington Dec., Exh. D (Wilkins-Jones Depo.) at 204:9-25; 205:3-10.  Additionally, plaintiff

20  asserts that given the mobility difficulties commonly associated with lupus and rheumatoid arthritis,

21  identifying herself as an individual with both diagnoses was sufficient to expressly notify the intake

22  nurse of her need for reasonable accommodation.  Defendant disputes whether plaintiff actually

23  made any requests for a wheelchair, and further states that she did not follow the appropriate facility

24  procedure of filing an "Inmate Message Request" in order to request a wheelchair.  JSUF ¶ 149-150,

25  159.

26       Plaintiff also contends that her need for reasonable accommodation was obvious.  In support

27  of this claim, plaintiff proffers evidence that she had noticeable mobility difficulties during her

28                                              7

United States District Court

For the Northern District of California

five-day detention.  It is undisputed that on the trips between Santa Rita and the Courthouse, there was significant walking involved and plaintiff lagged approximately 25 feet or more behind the group of inmates with whom she traveled.  Herrington Dec., Exh. D (Wilkins-Jones Depo.) at 228.  Plaintiff concedes, however, that she did not specifically ask the intake nurse for the use of a mobility device, but argues nonetheless that her difficulty accessing the various facilities on foot should have been obvious to the staff given the difficulties she experienced traveling between facilities.  It is also undisputed that plaintiff's hands were at all relevant times severely disfigured due to rheumatoid arthritis. JSUF ¶ 4.  Notwithstanding these facts, defendant asserts that plaintiff's need for reasonable accommodation beyond that which was provided was not obvious to the County staff.  Defendant contends that although plaintiff had some mobility challenges, she was able to arrive everywhere she needed to be, albeit lagging behind her group, and therefore did not require reasonable accommodation in order to access the County's detention facilities.

Considering the facts in the light most favorable to the plaintiff, the intake nurse's documentation of plaintiff's illnesses alone did not necessarily provide sufficient notice of plaintiff's alleged need for reasonable accommodation.   Both lupus and rheumatoid arthritis are incremental in their progression, and many people with one or both diagnoses are able to function for substantial periods after onset with little limitation.  Plaintiff acknowledges that her lupus "has been controlled and stable for several years," JSUF ¶ 5, and that her arthritis has been slowly progressing over time, but "does not result in major or dramatic shifts in her overall condition." JSUF ¶ 6.  Accordingly, the mere mention of her diagnoses without further expression of a particular need or limitation in relation to the diagnoses would not, as a matter of course, serve to notify the County that plaintiff required reasonable accommodation.  Yet, plaintiff had at least some noticeable and significant difficulties with mobility in the presence of deputies and other County staff, as revealed by her struggle to keep up with her inmate group as she walked back and forth between the facilities in question.  Moreover, plaintiff asked deputies for the use of a wheelchair during her travel in between the County's detention facilities.  That plaintiff's requests for accommodation did not comport with the County's procedures is insufficient to negate the fact that she made known to jail staff that she

United States District Court

For the Northern District of California

1  needed accommodation. Considering Nurse's Brown notation of plaintiff's diagnoses together with

2  plaintiff's noticeable mobility challenges and her express requests for a wheelchair, the evidence,

3  taken in the light most favorable to the plaintiff, suggests that defendant arguably had sufficient

4  notice of a need to reasonably accommodate plaintiff. Accordingly, the evidence is sufficient to

5  raise a genuine issue as to whether defendant had knowledge, for the purposes of the deliberate

6  indifference standard, that plaintiff required reasonable accommodation. The court now moves on to

7  the second element of deliberate indifference: failure to act.

8                     2.      Failure to Act

9        The second element of "deliberate indifference" requires a showing that the public entity

10  failed to act upon the likelihood of a harm to a federally protected right, here the right to reasonable

11  accommodation. This element requires something more than negligence. *Duvall*, 260 F.3d at 1139

12  ("[I]n order to meet the second element of the deliberate indifference test, a failure to act must be a

13  result of conduct that is more than negligent, and involves an element of deliberateness."). Plaintiff

14  argues that the denial of a mobility device and medication, her detention in inaccessible facilities,

15  and the alleged architectural violations that she encountered throughout the facilities in question all

16  provide evidence of deliberateness of the County's failure to act.

17        In support of this proposition, plaintiff firstly proffers evidence that Nurse Brown prescribed

18  only an extra mattress and pillows to address plaintiff's lupus and rheumatoid arthritis. It is

19  undisputed that notwithstanding plaintiff's diagnoses, Nurse Brown did not assign plaintiff to any

20  accessible facilities at Santa Rita. Herrington Decl., Exh. C (Brown Depo.) at 126. Defendant

21  asserts that at worst, Nurse Brown was negligent in her assessment and subsequent treatment of

22  plaintiff. According to defendant, the intake was especially busy on the evening of plaintiff's

23  arrival, and that if PHS generally, and Nurse Brown specifically, can be deemed to have had notice

24  of plaintiff's need for reasonable accommodation, the failure to act upon that knowledge was mere

25  negligence incident to an excessively busy night rather than evidence of a deliberate act of denial of

26  reasonable accommodation. Indeed, Nurse Brown did not deny an express request by plaintiff for

27  reasonable accommodation. Had she done so, it would not be unreasonable to conclude that the

28

9

United States District Court

For the Northern District of California

1    denial of reasonable accommodation to plaintiff was done with deliberateness. *See Duvall*, 260 F.3d

2    at 1138 (finding a deliberate failure to act where a public entity's officials refused to provide

3    reasonable accommodation after the plaintiff's repeated express requests for accommodation.)

4    While the evidence shows that Nurse Brown failed to appreciate the degree to which plaintiff's

5    diagnoses could potentially limit her ability to access the facilities, it does not show that Nurse

6    Brown refused to honor a specific request for accommodation and therefore does not amount to a

7    deliberate failure to act.  Moreover, while a busy night in the jail's intake, and the increased

8    likelihood for mistakes and oversight during its course, can provide evidence of negligence it does

9    not substantiate a claim of deliberate denial of reasonable accommodation.

10          Secondly, plaintiff asserts that the County's deputies' denial of plaintiff's request for a

11   wheelchair and subsequent failure to inquire further into whether her need was legitimate is evidence

12   of a deliberate failure to act.  Plaintiff alleges that on two occasions, as she was being transported

13   between destinations within Santa Rita, she asked County deputies in charge of transporting inmates

14   if she could use a wheelchair and her requests were denied on both occasions. Docket No. 129

15   (McGuiness Decl.), Exh. D (Wilkins-Jones Depo.) at 204-05, 226-27.  In one instance, plaintiff

16   asked to use an empty wheelchair she encountered as she was being transported from the booking

17   area to the holding cell. Wilkins-Jones Depo. at 204-05.  On another occasion, she requested a

18   wheelchair as she and other inmates were being lined up for transport from the holding cell to the

19   housing unit.  Wilkins-Jones Depo. at 226-27.  Given the facts and the context of plaintiff's request

20   here, and considering the County's interest in "maintaining security and order," it was not

21   unreasonable for the deputy to deny plaintiff's requests in those specific moments. *Pierce v. County

22   of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

23   Indeed, the denials were reasonable in light of the fact that she made her requests at moments when

24   the County's interest in safety was perhaps at its highest, namely while deputies were transporting a

25   group of inmates within the jail. *Id.* at 1216 (quoting *Gates v. Rowland*, 39 F.3d 1439, 1446 (9th Cir.

26   1994) ("While the regulations promulgated under Title II provide a framework for analyzing ADA

27   claims generally, we have held that inmates' rights must be analyzed 'in light of effective prison

28

10

United States District Court

For the Northern District of California

administration.'").  Plaintiff proffers evidence that defendant's Rule 30(b)(6) witness, Alameda County Sheriff's Office official, James Farr, testified that he personally believed that upon seeing an inmate with a physical disability who appeared to be without reasonable accommodation, he had an obligation to "refer them to Prison Health Services and make sure that they talked to the right people."  Docket No. 129 (McGuiness Dec.) Exh. F (Farr Depo.) at 68.  Farr went on to testify, however, that there was no actual prison policy requiring that a County deputy "take such independent action if [she or he saw] a physically disabled person not apparently receiving an accommodation." *Id*.  Indeed, plaintiff does not dispute that it was the responsibility of PHS staff, and not the responsibility of the County deputies, to prescribe mobility devices for inmates requiring such accommodation.  Viewing these facts in the light most favorable to the plaintiff, plaintiff does not meet her burden of showing that deputies' denial of her wheelchair request was deliberate.  While best practices may have dictated that the deputies here should have informed PHS staff of plaintiff's request for a mobility device while in transit, the deputies had no actual duty to report plaintiff's request.  Thus, it is unreasonable to perceive their failure to do so here as indicative of deliberateness for the purposes of determining intentional discrimination, and the evidence does not point to any other act of deliberate denial on the part of the County's deputies.

Lastly, plaintiff proffers as evidence of a deliberate failure to act the fact that the County excluded Santa Rita and Glenn Dyer jails from its ADA transition planning.  Defendant counters that because all three facilities were built prior to January 26, 1992 and therefore qualify as "existing" structures under the ADA, and because the facilities have not been significantly altered, the County was not required to include them in any transition planning provided that the County implemented programmatic changes to provide equal and meaningful access to qualified persons.  Consequently, their exclusion from the County's transition planning is not evidence of a deliberate failure to act.

Under the ADA, a public entity need not alter an "existing" structure in order to comply with the statute, but rather may comply by providing for programmatic access.  28 C.F.R. § 35.150(a)(1), (b)(1)[1]; *Huezo v. Los Angeles Comm. Coll. Dist.*, 672 F.Supp.2d 1045, 1050 fn. 14 (C.D.Cal. 2008).[2]  An existing structure is one built prior to the effective date of the ADA, January 26, 1992.  28 C.F.R.

§ 35.150(a)(1).  If after self-evaluation, a public entity determined that significant alteration to an existing structure was necessary in order to bring it into compliance, then the entity was required to develop a transition plan "setting forth the steps necessary to complete such changes" within six months of January 26, 1992. 28 C.F.R. 35.150 (d)(1).  And, if any "existing" structure, or any portion thereof, is significantly altered after the dividing date, then the altered portion must comply with the guidelines and standards for "new" structures (those structures constructed after the dividing date.)  *See Pierce v. County of Orange*, 526 F.3d. 1190, 1215-16 (9th Cir. 2007) ("The regulations allow public entities to use a variety of methods to make existing facilities 'readily accessible,' including the 'reassignment of services to accessible buildings' and the 'alteration of existing facilities and construction of new facilities.'" (citing 28 C.F.R. § 35.150(b)(1))).  All of the facilities in question here were built prior to January 26, 1992.  Accordingly, the County was not required to include them in any transition planning unless after self-evaluation, the County determined that alteration was required to bring any of the facilities into compliance.  Plaintiff has not proffered evidence showing that the facilities have indeed been altered so as to trigger an ADA transition planning requirement.

In addition, plaintiff offers as evidence of a failure to act the County's settlement of two lawsuits in which the County agreed to make accessible the men's holding cells in Santa Rita and the Courthouse.  Plaintiff argues that these settlements put the County on notice that its women's facilities may have been out of compliance.  Plaintiff concedes, however, that there were accessible cells available to women at the time of her detention.  It is not relevant to this action whether those facilities are ADA compliant because plaintiff's action here is for money damages only and she concedes that she did not encounter those facilities.  Indeed, the crux of her argument is that the County denied her access to those facilities.  Thus, the plaintiff's arguments here are unavailing.  The evidence does not show that County was required to include any of the facilities in its transition planning.  Accordingly, the fact that it did not do so is insufficient to show a deliberate failure to act.

The court finds that plaintiff has not adduced any evidence from which the trier of fact could find that defendant's behavior rose to the level of deliberateness and was something more than

United States District Court

For the Northern District of California

1  negligent.  Indeed, plaintiff concedes that her proffered evidence is unlikely to support survival of

2  summary judgment as to deliberate indifference and her federal claims.  Docket No. 127 (Plaintiff's

3  Opposition to Defendant's Motion for Summary Judgment) at 4.  In making this argument, plaintiff

4  contends that defendant has "delayed discovery, leaving plaintiff without the facts necessary to

5  oppose the County's [motion] as to her federal claims," and asks the court to stay its decision on

6  defendant's motion. *Id.*  Plaintiff would hope to uncover evidence regarding the jails' construction

7  and alteration records in order to determine whether defendant was in fact required to include the

8  facilities in its transition planning.  The court declines to stay its decision as to defendant's motion.[3]

9  Plaintiff filed this action well over two years ago and only now petitions the court as to defendant's

10  alleged delays to her discover requests.  From the inception of this action, plaintiff has sought money

11  damages for which deliberate indifference is a necessary element.  The plaintiff has not met her

12  burden of producing evidence from which the trier of fact could reasonably find that defendant acted

13  with deliberate indifference.  Accordingly, summary judgment as to plaintiff's federal claims is

14  GRANTED in favor of defendant.

15        B.      State Law Claims

16        Plaintiff brings claims against defendant under the Unruh Civil Rights Act, the California

17  Disabled Persons Act ("CDPA") and Cal. Govt. Code § 11135.  Defendant argues that none of these

18  state laws apply in this case.  The court now addresses these claims.

19             1.      Unruh Act

20        Defendant argues, and plaintiff does not dispute, that the Unruh Act applies to "business

21  establishments" and does not apply to state detention facilities.  In passing the Unruh Act, the

22  California Legislature intended to provide broad protection against arbitrary discrimination.

23  *O'Connor v. Village Green Owners Assn.*, 33 Cal.3d 790, 795 (1983).  Accordingly, "the term

24  'business establishments' [should be] used in the broadest sense possible." *Id*; *Munson v. Del Taco,*

25  *Inc.*, 46 Cal.4th 661, 666 (2009) (quoting *Angelucci v. Century Supper Club*, 41 Cal.4th 160, 167

26  (2007) ("With regard to the Unruh Civil Rights Act particularly, we recently explained that it must

27  be construed liberally in order to carry out its purpose to 'create and preserve a nondiscriminatory

28

13

environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments.'")

In *O'Connor*, the California Supreme Court further defined the term "business" as used in the statute and determined that it "embraces everything about which one can be employed, and it is often synonymous with calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain." *O'Connor*, 33 Cal.3d at 795 (1983) (internal quotations and citations omitted). By this definition, even in its broadest interpretation, the Unruh Act does not appear to apply to correctional facilities. *See Taormina v. Cal. Dept. of Corrections*, 946 F.Supp. 829, 834 (S.D.Cal. 1996) ("According to [the *O'Connor* test], a prison does not qualify as a 'business' because prisoners are not engaged in a calling, occupation or trade for purposes of making a livelihood or gain. Rather, they are incarcerated by the state because of crimes which they have committed.") While correctional facilities may be 'business establishments to the extent that they employ a vast array of persons [and] care for an extensive physical plant," they do not charge fees for the use of the premises nor is their "overall function[] to protect and enhance . . . economic value." *O'Connor*, 33 Cal.3d at 795 (finding that a non-profit hospital was a business establishment because it charged its patrons substantial fees and finding that a condominium association was a business establishment because it exercised its powers and duties to enhance economic value.) Accordingly, the Unruh Act does not apply here, and summary judgment as to the Unruh Act claim is GRANTED in favor of defendant.

2.     Cal. Govt. Code § 11135

Section 11135 states in relevant part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." Cal. Govt. Code § 11135(a).  Defendant argues that this statute does not apply here, and plaintiff does not dispute this assertion.  Accordingly,  as to this claim the court grants summary judgment in favor of defendant.

14

1

2          3.      CDPA

3          Defendant argues that the CDPA does not apply here because the statute applies to places of

4  public accommodation and that jails are not places of public accommodation.  The statute itself

5  provides in relevant part: "Individuals with disabilities or medical conditions have the same right as

6  the general public to the full and free use of the streets, highways, sidewalks, walkways, public

7  buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities,

8  and other public places." Cal. Civ. Code § 54.

9          A search of California case law does not reveal any binding state precedent applying the

10  CDPA to correctional facilities.  However, the intent of the California Legislature is persuasive here.

11  In passing the CDPA, "[it was] the intent of the Legislature . . .to strengthen California law in areas

12  where it is weaker than the [ADA] and to retain California law when it provides more protection for

13  individuals with disabilities than the [ADA]." Section 1 of Stats.1992, c. 913 (A.B.1077).  This

14  legislative intent is codified in the statute itself. Cal. Civ. Code § 54(c) ("A violation of the right of

15  an individual under the [ADA] also constitutes a violation of this section.")  Given that the

16  legislature intended the CDPA to provide, at a minimum, the same protections that the ADA

17  provides, it would be incongruous to this legislative intent to conclude that the CDPA provides less

18  protection to correctional facilities than the ADA. *See Pa. Dep't. of Corr. v. Yeskey*, 524 U.S. 206,

19  209-10 (1998) (holding that the ADA applies to state correctional facilities).  Moreover, defendants

20  concede in oral argument that at a minimum, Santa Rita, the Glenn Dyer Jail and the Courthouse all

21  have public aspects that are subject to the CDPA.  For example, these facilities have waiting areas

22  and parking lots that are open to the general public even though the detention areas of these facilities

23  are open to only those members of the public who are arrested, detained or incarcerated.  It would be

24  inconsistent then to determine that the statute applied, for example, to one side of a dividing wall

25  and potentially not to the other.  Accordingly, the court concludes that the CDPA applies to the

26  facilities at issue in this case.

27

28

1    In sum, as to plaintiff's state-based claims, the court GRANTS defendant's motion for

2    summary judgment as to her state Unruh Act and section 11135 claims and DENIES defendant's

3    motion as to plaintiff's CDPA claim.

4    II.    Plaintiff's Motion for Summary Judgment

5    The court now turns to plaintiff's motion for summary judgement and considers whether there

6    is a violation of plaintiff's remaining CDPA claim on the facts as presented.  There are two separate

7    and independent grounds for establishing a violation of the CDPA.  A violation of the ADA standard

8    constitutes a CDPA violation, Cal. Civ. Code § 54(c), as does a violation of state building code.

9    *Moeller v. Taco Bell Corp.*, 2007 WL 2301778 at *5 (N.D.Cal.) (Jenkins, J.) (citing *Arnold v. United*

10   *Artists Theatre Circuit, Inc.*, 866 F.Supp. 433, 439 (N.D.Cal. 1994)).  Intent is not a requirement in

11   actions involving money damages brought under the CDPA.  *See Donald v. Cafe Royale, Inc.*, 218

12   Cal.App.3d 168, 177 (1990) ("Viewing the statute reasonably and in a common sense fashion

13   compels the conclusion that no intent element is set forth."); *Lonberg v. City of Riverside*, 300

14   F.Supp.2d 942 (C.D.Cal. 2004).[4]  Rather, statutory damages are available upon a showing of both a

15   bare violation of applicable access regulations and "what is, in effect, a standing requirement."

16   *Urhausen v. Longs Drug Stores Cal. Inc.*, 155 Cal.App.4th 254, 262 (2007).  That is to say that the

17   plaintiff must show that the violation is specific to the occasion. *Id.* ("[T]o maintain an action for

18   damages pursuant to section 54 et seq. an individual must take the additional step of establishing that

19   he or she was denied equal access on a particular occasion.")  The court now addresses plaintiff's

20   contention that an ADA violation, and therefore a CDPA violation, exists on the facts presented

21   here.

22   Firstly, the court grants summary judgment in favor of defendant as to plaintiff's claim of a

23   violation to the extent it is based on defendant's alleged failure to administer medication to her while

24   in defendant's custody.  A claim based on the failure to administer medication is not actionable

25   under the ADA. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (quoting

26   *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("[T]he Act would not be violated by a prison's

27   simply failing to attend to the medical needs of its disabled prisoners . . . The ADA does not create a

28

United States District Court

For the Northern District of California

16

United States District Court

For the Northern District of California

remedy for medical malpractice.").  Moreover, a search of state case law reveals that state courts have not considered whether the alleged denial of medication is actionable under the CDPA. Finally, the language of the CDPA does not lend itself to the denial of medication.  It is couched in language about having the same right to the full and free use of public places.  No "right to medication" is within the penumbra of the CDPA's provisions.  For all of these reasons the court concludes that a denial of medication is not actionable in this case under the CDPA.

As to plaintiff's other claims, an ADA violation is established where a plaintiff proves that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall*, 260 F.3d at 1135 (citing *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).

Under the ADA, "the term 'disability' means, with respect to an individual[,] a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include . . . walking, standing, lifting, bending . . ." 42 U.S.C. § 12102(2)(A).  Defendant argues that plaintiff is not a person with a disability, yet presents evidence nonetheless from which the trier of fact could reasonably find that she *is* indeed disabled under the law.  The JSUF reflects defendant's acknowledgment that plaintiff has systemic lupus and rheumatoid arthritis, has deformed hands, has difficulty walking, getting in and out of chairs and bed, and has difficulty going up and down stairs.  JSUF ¶¶ 1-3, 7, 28, 29.  Defendant argues that corrective measures, namely plaintiff's surgeries and medication, have sufficiently mitigated her impairments, such that her diagnoses no longer substantially limit her ability to engage in major life activities. Yet, defendant appears to concede that plaintiff's disability affects her ability to engage in major life activities such as walking (e.g., consistently trailing behind her group of inmates), standing, and bending (e.g., getting into and out of bed).  Accordingly, the court finds that there is a genuine dispute of material fact as to whether plaintiff's diagnoses *substantially* limited her ability to engage in major life activities at the time of her detention by defendant.

United States District Court

For the Northern District of California

1    The remaining two elements, (2) whether the plaintiff was excluded from or denied the

2    benefits of services, programs or activities or otherwise discriminated against and (3) whether such

3    exclusion, denial of benefits, or discrimination was by reason of her disability, require a fact specific

4    inquiry given the plaintiff's demand for money relief. *See Urhausen*, 155 Cal.App.4th at 262.  To

5    succeed on these latter two elements, plaintiff bears the burden of proving that she came into actual

6    contact with specific barriers, whether programmatic or architectural, and that by reason of her

7    disability, she was unable to meaningfully access the County's programs, services, and benefits as a

8    result of those specific barriers.

9    Defendant disputes whether plaintiff came into contact with several of the alleged

10   architectural violations identified in her expert, Brian Atwood's, report, including those identified as

11   existing in the County's accessible facilities.  Because part of plaintiff's claims is that she was

12   denied access to accessible facilities, plaintiff effectively concedes that she did not come into actual

13   contact with any alleged violations in these accessible areas. JSUF ¶ 114, 115.  These alleged

14   violations include "Holding Cell 4 (Designated Accessible Cell)", Atwood Dec., Exh. B at 7-8,

15   "Room 229A (Accessible Holding Cell #3)", Atwood Dec., Exh. B at 21-22, "Cell 141A (Accessible

16   Medical Holding Cell) Atwood Dec., Exh. B at 25-25, "Elevator", Atwood Dec., Exh. B at 31-32.

17   Accordingly, summary judgment as to plaintiff's claims of violations regarding any County

18   accessible facilities is GRANTED in favor of defendant.

19   At hearing, the court instructed plaintiff to submit a detailed list of the exact barriers with

20   which she came into contact, and plaintiff subsequently proffered evidence of those specific barriers.

21   Docket No. 162 (Supplemental Declaration of Plaintiff).  Plaintiff alleges that as a result of her

22   encounter with these barriers, she has suffered lasting physical harm. *Id.* ¶¶ 60-61.[5]

23   Notwithstanding this evidence, the court finds that a genuine dispute of material fact remains as to

24   whether plaintiff was excluded from or denied the benefits of the County's services, programs or

25   activities or otherwise discriminated against, and whether such exclusion, denial of benefits, or

26   discrimination was by reason of her disability.  Additionally, a genuine issue of material fact

27   remains as to whether the barriers identified in plaintiff's evidence were in violation of state building

28

code provisions. Although plaintiff has proffered Brian Atwood's report as evidence of state building code violations, Atwood's own characterization of his evidence is insufficiently specific to warrant a finding in favor of the plaintiff. For example, Mr. Atwood's report declares, "I have prepared a table of access barriers that Plaintiff *likely* encountered at the subject facilities . . ." (emphasis added). Docket No. 75 (Atwood Dec.) ¶ 5. Accordingly, there remains a genuine issue of material fact here.

In sum, given plaintiff's proffered evidence, the court may not determine, as a matter of law, the precise barriers that plaintiff encountered, nor conclude whether and the degree to which those barriers functioned to exclude her from or deny her the benefits of the County's detention programs. Nor can the court determine as a matter of law whether such exclusion, denial of benefits, or discrimination was by reason of her disability. At trial, plaintiff will have the opportunity to proffer evidence that the barriers she allegedly encountered did indeed exclude her from or deny her the benefits of the County's services, programs or activities or otherwise discriminated against her; that such exclusion, denial of benefits, or discrimination was by reason of her disability; or in the alternative, that the actual and specific barriers she encountered violated the pertinent state building code provisions and therefore provide a basis for recovery under the CDPA. Similarly, defendant will have the opportunity to present its own evidence as to these matters. Accordingly, plaintiff's motion for summary judgement is DENIED.

Lastly, plaintiff has also brought a motion to strike declarations in support of defendant's motion for summary judgment. Plaintiff's motion is DENIED as moot because the disposition of plaintiff's objections does not affect the disposition of the cross-motions for summary judgment; the court does not rely upon any of the declarations or exhibits to which plaintiff objects in reaching its decision.

1

2   CONCLUSION

3          Partial summary judgment is GRANTED in part in defendant's favor as to plaintiff's federal

4   claims, state Unruh Act claim, and state section 11135 claim, and DENIED in part as to plaintiff's

5   CDPA claim.  Plaintiff's motion is GRANTED in part in favor of defendant and DENIED in part.

6          IT IS SO ORDERED.

7

8   Dated:  November 15, 2010                        _____

9                                                    MARILYN HALL PATEL
                                                     United States District Court Judge
                                                     Northern District of California

10

**United States District Court**

For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

### ENDNOTES

1. "A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section." 28 C.F.R. 35.150(b)(1).

2. "As the ADA regulations make clear, structural changes to facilities are not mandated if a public entity can guarantee disabled individuals ready access to each of its services, programs, and activities through alternative means, e.g., 'redesign[ing] ... equipment, reassign [ing] ... services to accessible buildings, assign[ing] ... aides to beneficiaries, [providing] home visits, deliver[ing] ... services at alternate accessible sites, ... construct[ing] ... new facilities, us [ing] ... accessible rolling stock or other conveyances, or any other methods.' (parallel regulatory provision of the Rehabilitation Act)." (internal citations omitted).

3. The court notes plaintiff's argument alleging defendant's recalcitrance in providing plaintiff with blueprints of the Santa Rita Jail, Docket No. 167 (Letter from Celia McGuiness), however the court declines to stay its ruling as to the present cross-motions for summary judgment.

4. Notwithstanding defendant's arguments, the court declines to follow the holding in *C.B. v. Sonora School Dist.*, 691 F.Supp.2d 1123 (E.D.Cal, 2009).

5. Specifically, plaintiff alleges that she developed sores, swelling, pain that lasted three to four months and permanent scarring on her legs after her release from detention. Plaintiff also alleges that she developed a urinary tract infection as a result of holding her urine because she was unable to access the toilets while in detention.

21