**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWNA WILKINS-JONES,

        Plaintiff,

        v.

COUNTY OF ALAMEDA,

        Defendant.

_____/

No. C-08-1485 EMC

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

**(Docket Nos. 176, 187)**

## I.   INTRODUCTION

Defendant's motion for summary judgment, Docket No. 176 ("Mot. for SJ"), and Plaintiff's motion for leave to file a first amended complaint, Docket No. 187 ("Mot. for Leave"), came on for hearing before the Court on July 22, 2011.

Shawna Wilkins-Jones filed suit against the County of Alameda ("County") on March 18, 2008, for violations of the California Disabled Persons Act ("CDPA") and the Americans with Disabilities Act ("ADA"). She alleges that she was denied access to jail policies and facilities for disabled persons when she was arrested and detained on April 13, 2007, for six days. Compl. ¶¶ 1-2. She seeks compensatory and injunctive relief under California and federal law. The Court has dismissed Plaintiff's claims for injunctive relief for lack of Article III standing, Docket No. 93, and has granted summary judgment to Defendant with respect to her damages claims under the ADA and Rehab Act, the Unruh Act, and California Government Code § 11135, Docket No. 169. Only her state law claims for damages under the CDPA, Cal. Civ. Code § 54, remain.

Having considered the parties' submissions and oral argument, the Court hereby **GRANTS** Defendant's motion for summary judgment, **GRANTS** in part and **DENIES** in part Plaintiff's motion for leave to file a first amended complaint, and enters the following order.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Shawna Wilkins-Jones suffers from systemic lupus and rheumatoid arthritis.  Joint Statement of Undisputed Facts, Docket No. 134 ¶¶ 1-2.  She has had both hips and her right knee replaced, and rheumatoid arthritis has left her hands deformed.  *Id.* ¶¶ 3-4, 28.  She has limited mobility as a result of her disabilities, though she has never been prescribed a walker or cane.  *Id.* ¶ 12.  Her doctor describes her as "semi-ambulatory."  *Id.* ¶ 16.  She takes several medications to manage her symptoms.  *Id.* ¶¶ 14-15.

Plaintiff was arrested on April 13, 2007, after the California Highway Patrol ("CHP") stopped her for speeding and discovered a suspended license from a previous speeding incident and an outstanding warrant for her arrest.  *Id.* ¶¶ 21, 24-25.  Police took her to Santa Rita Jail where officers booked her at the intake counter.  *Id.* ¶¶ 31-35.  During the intake process, Plaintiff notified a jail employee that she needed to take her medication, and the employee told her she would see a physician as part of the intake process.  *Id.* ¶ 36.  Next, an officer brought her to a non-accessible holding cell for several hours before she was fingerprinted and photographed.  *Id.* ¶¶ 37-39.  She avers that she then waited in a communal, non-accessible holding cell, where it was difficult for her to access the toilets and benches.  Wilkins-Jones Supp. Decl. ("Supp. Decl."), Docket No. 162, ¶¶ 11-16.  She needed assistance from other women in the cell in order to access the facilities and to get up and down from the floor, where she had to lay in order to rest.  *Id.* ¶¶ 12, 15.

At approximately 5:00 or 6:00 p.m., Plaintiff received an evaluation by Nurse Brown.  Docket No. 134 ¶ 44.  Plaintiff did not notify the nurse that she was having any difficulty in the holding cell and did not request an accessible toilet.  *Id.* ¶¶ 47-48.  Plaintiff did inform the nurse of her medical conditions and received a prescription for Darvocet within an hour.  *Id.* ¶ 50.  Nurse Brown also requested a bottom bunk for her and noted that handrails and stairs would be difficult for her to use. FAC ¶ 27.

1    Plaintiff remained in the intake area for 32 hours before moving to the non-accessible

2    Housing Unit 25 at 6:39 pm on April 14, 2007, where she had a lower bunk on the lower tier of the

3    unit.  *Id.* ¶¶ 55, 94.  She states that she still had problems lifting herself from and lowering herself to

4    the toilets.  Supp. Decl. ¶¶ 29-31.  On April 15, Plaintiff wrote an "Inmate Message Request" to the

5    jail authorities. She stated, "I have systemic lupus and [rheumatoid arthritis].  Haven't had meds for

6    3 days.  In very bad pain not doing well at all."  Docket No. 134 ¶ 95.  She saw medical personnel

7    and received Prednisone for the first time on April 16th.

8    On April 16th and 17th, Plaintiff was transported and forced to walk long distances to the

9    Wiley Manuel Courthouse, where she waited all day without seeing a judge.  *Id.* ¶¶ 103-05; Docket

10   No. 169 at 3-4.  She states that staff refused her requests for a wheelchair.  Supp. Decl. ¶¶ 24, 34.

11   She struggled to navigate the stairs, walkways, and vehicles during transport, and lagged behind the

12   group due to pain and stiffness.  *Id.* ¶¶ 35-47, 50-55.  She returned each night to the jail via the same

13   long walking path, and was released early on the morning of the 18th.  Docket No. 169 at 4.  She

14   alleges that she suffered from swelling, pain, and sores on her legs that lasted three to four months

15   after her release, and developed a urinary tract infection from avoiding the facilities.  Supp. Decl. ¶

16   61.

17   On October 3, 2007, Plaintiff submitted a government claim against the County for

18   injunctive relief and damages.  The claim was rejected on October 17, 2007.  Docket No. 187 at 1-2.

19   She then filed her federal Complaint on March 17, 2008, seeking injunctive relief and damages

20   under the CDPA, ADA, and Unruh Act.  Docket No. 1.

21   On February 17, 2010, Defendant moved to dismiss Plaintiff's injunctive relief claims on the

22   grounds that she lacked Article III standing.  Docket No. 65.  While that motion was pending,

23   Plaintiff filed a motion for partial summary judgment on April 19, 2010.  Docket No. 73.  After

24   granting a stay of the summary judgment motion, the Judge Patel of this Court granted Defendants'

25   motion to dismiss as to the injunctive relief claims on May 28, 2010.  Docket No. 93.  Defendant

26   then filed a cross motion for summary judgment on July 26, 2010, Docket No. 109, which Judge

27   Patel granted in part and denied in part on November 26, 2010.  Docket No. 169.  The Court denied

28   Plaintiff's summary judgment motion at the same time.  In its Order, the Court granted summary

1   judgment to Defendant as to Plaintiff's claims under Title II of the ADA, the Rehab Act, the Unruh

2   Act, and Cal. Govt. Code § 11135.  The Court also found that Plaintiff's denial of medication was

3   not actionable under the CDPA, and that because Plaintiff did not personally encounter any of the

4   County's accessible facilities, Plaintiff could not assert any violations regarding those facilities.

5   However, with respect to Plaintiff's CDPA claims, the Court found that issues of material fact

6   remained.  Specifically, the Court made the following findings:

> (1)    "[T]here is a genuine issue of material fact as to whether
> plaintiff's diagnoses substantially limited her ability to engage in
> major life activities at the time of her detention by defendant."  Docket
> No. 169 at 17.  Thus, it was unclear without further factual
> development whether Plaintiff met the first prong of an ADA violation
> (which establishes a CDPA violation).
> (2)    There is a "genuine dispute of material fact . . . as to whether
> plaintiff was excluded from or denied the benefits of the County's
> services, programs or activities or otherwise discriminated against."
> Docket 169 at 18.  Thus, prong two of the ADA/CDPA violation
> required further factual development.
> (3)    There is a "genuine dispute of material fact . . . as to whether
> [any] such exclusion, denial of benefits, or discrimination was by
> reason of her disability."  Docket No. 169 at 18.  Thus, prong three of
> the ADA/CDPA violation required further factual development.
> (4)    "[A] genuine issue of material fact remains as to whether the
> barriers identified in plaintiff's evidence were in violation of state
> building code provisions."  Docket No. 169 at 18-19.  Thus, further
> factual development was necessary to determine whether plaintiff can
> demonstrate a CDPA violation via proof of a state building code
> violation.

18          Thus, following Judge Patel's November 26, 2010 Order, only Plaintiff's state law claims

19  under the CDPA remain.  Defendant filed a second motion for summary judgment on April 1, 2011,

20  regarding those remaining claims.  Docket No. 176.  The case subsequently was reassigned to the

21  undersigned.  Plaintiff filed a motion for leave to file the First Amended Complaint, adding new

22  defendants and claims, on June 17, 2011.  Docket No. 187.  Both are pending before this Court.

## III.   DISCUSSION

A.   Defendant's Motion for Summary Judgment

    1.   Legal Standard

26          "The court shall grant summary judgment if the movant shows that there is no genuine

27  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

28  Civ. P. 56(a); *see Anderson v. Liberty*, 477 U.S. 242, 256-57 (1986); *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986).  The Court construes all facts in favor of the nonmoving party, but a mere

scintilla of evidence will not suffice.  *Scott v. Hendrich*, 978 F.2d 481, 484 (9th Cir. 1992).

Plaintiff can demonstrate a violation of the CDPA via two routes: (1) a violation of the ADA

standard, Cal. Civ. Code § 54(c); or (2) a violation of state building code.  Docket No. 169 (citing

*Moeller v. Taco Bell Corp.*, 2007 WL 2301778 at *6 (N.D. Cal. Aug. 8, 2007). A successful claim

under the ADA prong requires Plaintiff to prove: "(1) he is a "qualified individual with a disability";

(2) he was either excluded from participation in or denied the benefits of a public entity's services,

programs, or activities, or was otherwise discriminated against by the public entity; and (3) such

exclusion, denial of benefits, or discrimination was by reason of his disability.  *Duvall v. County of

Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (citing *Weinreich v. Los Angeles County Met. Transp.

Auth.*, 114 F.3d 976, 978 (9th Cir.1997)).  In addition to demonstrating a violation under one of the

above two prongs, Plaintiff must also satisfy the "standing requirement"; that is, she must establish

that she "was denied equal access on a particular occasion."  *Urhausen v. Longs Drug Stores Cal.,

Inc.*, 155 Cal. App. 4th 254, 262 (2007).

2.    <u>Statutory Immunities</u>

Defendant maintains that summary judgment is proper because it is statutorily immune from

Plaintiff's claims under California Government Code §§ 845.2 and 844.6.  Mot. for SJ at 2.  As an

initial matter, Plaintiff argues that Defendant has waived any statutory immunity claims because it

did not raise them earlier in the litigation.  Opp. to Mot. for SJ at 4.  However, the California courts

have held that governmental immunity is jurisdictional, and a defendant may raise it at any time.

*See Buford v. California*, 104 Cal. App. 3d 811, 826 (1980) ("Since governmental immunity is

jurisdictional and can properly preclude a cause of action, we can appropriately address the

applicability of section 854.8.").[1]  Therefore, the Court proceeds to the merits of Defendant's claims.

---

[1]  Even if some notion of waiver or estoppel was available here, the Court finds that there is
no prejudice because Defendant is merely asserting legal defenses and has gained no strategic or
tactical advantage through its conduct.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.      Govt. Code § 844.6

The County argues that Plaintiff can assert no CDPA damages claim for barriers she encountered while detained because Government Code § 844.6 bars all claims for damages against a public entity for injuries to a prisoner.  Mot. for SJ at 4.  Government Code § 844.6 states, in relevant part, that "a public entity is not liable for . . . (2) An injury to any prisoner."  Cal. Govt. Code § 844.6(a)(2).

The Court agrees.  Section 844.6, by its plain terms, applies to this case and the courts have afforded it a broad application.  *See Munson v. California*, No. CIV S-09-0478, 2011 WL 284591, at *3 (E.D. Cal. Jan. 25, 2011) (dismissing a plaintiff's CDPA claim on the same grounds and acknowledging that "California courts have held that the state is a 'public entity' under § 844.6 and that public entities are immune from liability for injury to a prisoner.")[2] (citing *Teter v. City of Newport Beach*, 30 Cal. 4th 446, 448-49 (2003) (finding entity immune from suit by a prisoner who was beaten by another prisoner); *Savitt v. Jordan*, 142 Cal. App. 3d 820, 812-22 (1983) ("Although we agree that it is regret[t]able to grant immunity to a public entity after it has been proved to be grossly negligent, we must conclude that this is the law.  Section 844.6, subdivision (a) explicitly provides that with the exception of certain enumerated sections the immunity granted to public entities is absolute.")).

Like the plaintiff in this case, *Munson* involved a disabled plaintiff who alleged that he had been denied access to the shower, bathing, and restroom facilities while incarcerated.  *Munson*, 2011 WL 284591 at *1.  He alleged that he sustained long-term injuries as a result of the inaccessible facilities, including bladder infections and injuries to his feet and buttocks.  *Id.*  The court found that § 844.6 conferred immunity on the State of California from liability under the CDPA.  *Id.* at *3.  *Munson* is on point.

In fact, other courts have construed the broad statutory language granting immunity to public entities to apply to other statutes similar to the CDPA.  *See Moyle v. County of Contra Costa*, No.

_____

[2] The above citation refers to a Magistrate Judge's report, which the District Court adopted in full.  *See Munson v. California*, No. CIV S–09–0478, 2011 WL 1114448 (E.D. Cal. March 28, 2011).

United States District Court

For the Northern District of California

05-2324, 2007 WL 4287315, at *16 (N.D. Cal. Dec.5, 2007) (granting immunity under § 844.6 against Unruh Act and Bane Act claims); *Martinez v. California*, 2008 WL 4500131, at *5-6 (E.D. Cal. Oct. 4, 2008) (dismissing claim against the state brought under California's Elder Abuse and Dependant Adult Civil Protection Act due to the state's immunity under § 844.6); *Cf. Bull v. San Francisco*, No. 03-1840, 2006 WL 449148, at *21 (N.D. Cal. Feb. 23, 2006) (finding that Cal. Penal Code § 4030(p)'s grant of a private right of action to detainees for violations of strip search statute prevailed over immunity of § 844.6 because it was more specific and enacted later).  Indeed, the California Supreme Court has confirmed that the Tort Claims Act renders liability for public entities the exception, rather than the rule.  *See Teter v. City of Newport Beach*, 30 Cal. 4th 446, 451 (2003) ("[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances.") (quotations omitted).

Plaintiff argues that even if § 844.6 technically applies to her, the Court should find that they do not bar liability against these claims for damages.  However, her arguments against immunity are not persuasive.

First, she contends that principles of statutory construction favor a finding of no immunity.  Opp. to Mot. for SJ at 11.  In this case, however, the statutory language is clear (especially § 844.6), and as noted above, courts have emphasized that the Act's reach is broad.  *See Holland v. City of San Francisco*, No. 10-2603, 2010 WL 5071597, at *8-11 (N.D. Cal. Dec. 7, 2010) (noting the sweeping grant of immunity under § 844.6); *Moyle v. County of Contra Costa*, No. 05-2324, 2007 WL 4287315, at *16 (N.D. Cal. Dec.5, 2007).  Moreover, because § 844.6 provides an explicit list of exceptions,[3] courts have applied principles of statutory construction to hold that any section not specifically listed as an exception to 844.6 is barred under the doctrine of *expressio unius est exclusio alterius*.  *See Moyle*, 2007 WL 4287315 at *16 ("In light of the legislature's choice to take this narrow approach, it is reasonable to conclude that claims under Penal Code section 4030 and

---

[3]  *See* Cal. Govt. Code § 844.6 ("Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code . . . .").

United States District Court
For the Northern District of California

1    Civil Code section 52.1 were not intended to be excluded under section 844.6, even though both of

2    those provisions were enacted after section 844.6.").

3           Second, Plaintiff argues that the legislature intended the CDPA to provide the same level of

4    protection as the ADA, which applies to prisons.  She contends that Government Code § 4450 and

5    the CDPA impose a specific duty on public entities that is not abrogated by § 844.6.  Opp. to Mot.

6    for SJ at 12.  However, as the California Court of Appeal has noted, "It is generally recognized that

7    a statutory governmental immunity overrides a statute imposing liability."  *Gates v. Superior Court*,

8    32 Cal. App. 4th 481, 510 (1995) (holding that § 845 precluded a claim of intentional racial

9    discrimination); *see also* Cal. Govt. Code § 815, Legis. Comm. Cmt. ("[T]he immunity provisions

10   will as a general rule prevail over all sections imposing liability."); *Moyle*, 2007 WL 4287315 at *16

11   (finding that the legislature has manifested an intent to grant full immunity unless it specifically

12   notes exceptions within the statute).  *Caldwell v. Montoya*, 10 Cal. 4th 972, 986 (1995), clarified the

13   broad protections afforded by statutory immunity like § 844.6, stating,

14              [W]here the immunity provided by section 820.2 would otherwise
                apply, that immunity cannot be abrogated by a statute which simply
15              imposes a general legal duty or liability on persons, including public
                employees.  Such a statute may indeed render the employee liable for
16              his violations unless a specific immunity applies, but it does not
                remove the immunity.  This further effect can only be achieved by a
17              clear indication of legislative intent that statutory immunity is
                withheld or withdrawn in the particular case.
18

19   *Id.*  The Court held that FEHA, which imposed a general prohibition of employment discrimination,

20   did not clear this high threshold.  As the Court of Appeal explained in *Gates v. Superior Court*,

21   "[n]ormally, governmental immunities apply to statutes outside the Tort Claims Act which provide

22   for liability."  32 Cal. App. 4th at 513.  To override this general rule, the Legislature must "clearly []

23   decree[] that the provisions of the [statute] are to displace [the immunity]."  *Id.*.  *See also Wigfall v.*

24   *City and County of San Francisco*, No. C 06-4968, 2007 WL 174434, at *3 (N.D. Cal. Jan. 22,

25   2007) ("[T]he California Supreme Court imposes strict requirements for a statute to override a

26   government immunity: the legislature must 'decree[ ] that the provisions of the [statute] are to

27   displace [the immunity].'") (quoting *Schmidt v. Superior Court*, 48 Cal. 3d 370, 383 (1989)).  Unless

28   the Legislature makes clear its intent to abrogate Tort Claims Act immunity, a statute of general

United States District Court

For the Northern District of California

applicability like the CDPA does not overcome it.  As in *Gates* and *Wigfall*, here Plaintiff has presented no evidence that the legislature so intended when it enacted the CDPA, nor that any court has construed the CDPA to override the government's statutory immunity.  *See Gates*, 32 Cal. App. 4th at 513 ("[W]e have not been provided with any legislative history or statutory language which indicates an intention on the part of the Legislature to modify the sovereign immunity doctrine which relates to [the conduct at issue].").

Moreover, as in *Caldwell*, in this case, the statute's relative specificity supports a finding of immunity.  Section 844.6 specifically relates to public liability for prisoner injuries and prison facilities, whereas the CDPA more generally grants rights to disabled persons with respect to public accommodations.  *Cf. Bull v. San Francisco*, No. 03-1840, 2006 WL 449148, at *21 (N.D. Cal. Feb. 23, 2006) (Cal. Penal Code § 4030(p)'s private right of action for violations of strip search statute is more specific than the general immunity of § 844.6).  The CDPA's generality is insufficient to abrogate § 844.6's specific immunity.

Third, Plaintiff maintains that the statute does not bar liability because to do so would create a right without a remedy, which is "strongly disfavored" in our judicial system.  Opp. to Mot. for SJ at 16.  However, Plaintiff acknowledges that California law provides a remedy for every right "unless a departure from the basic principle is mandated by a legislative exception or by strong public policy."  *Id.* (quoting *Boat & Motor Mart v. Sea Ray Boats, Inc*., 825 F.2d 1285, 1290 (9th Cir. 1987).  Section 844.6 is just such a legislative exception, granting immunity for conduct that would otherwise be actionable.  Furthermore, § 844.6 does not preclude all liability for damages under the CDPA.  For instance, § 844.6 does not preclude the application of the CDPA to prisons in action brought by non-prisoners (such as visitors).[4]  Nor does the CDPA preclude equitable relief where standing is established.

---

[4] In addition, Congress has abrogated the states' immunity from claims under the ADA; therefore, Plaintiff had the opportunity to bring claims for monetary damages under that statutory regime.  *See Munson*, 2011 WL 284591 at *2 ("Defendant concedes that it is well-settled in the Ninth Circuit that Congress has validly abrogated the states' Eleventh Amendment immunity in enacting the ADA and RA.").  In this case, however, the Court has already granted summary judgment to Defendant on Plaintiff's ADA claim because she had failed to meet "her burden of producing evidence from which the trier of fact could reasonably find that defendant acted with deliberate indifference."  Docket No. 169 at 13.

United States District Court

For the Northern District of California

1    Fourth, Plaintiff argues that the Tort Claims Act ("Act") as a general matter does not confer

2    immunity for statutory damages claims under the CDPA.  Opp. to Mot. for SJ at 16.  Plaintiff cites

3    to *Kizer v. County of San Mateo*, 53 Cal. 3d 139 (1991), as support for her position that the Act is

4    designed only "to limit governmental liability for actual compensatory damages in tort cases," Opp.

5    to Mot. for SJ at 17, and does not operate to preclude statutory penalties that "motivate compliance

6    with statutes and regulations."  However, *Kizer* is inapposite.  *Kizer* dealt with a state-imposed

7    citation (by the Department of Health Services) on a county long-term health care facility for

8    violations of the Health and Safety Code.[5]  Unlike this case, it did not address any portion of the

9    Tort Claims Act that precluded liability entirely; rather, it simply analyzed the applicability of §

10   818's prohibition on exemplary and punitive damages against government entities and determined

11   whether that statute also precluded civil penalties imposed against the health care facility under the

12   Health and Safety Code.  The California Supreme Court held that § 818's bar of punitive damages

13   applied only to those damages sounding in tort; *i.e.*, those punitive damages that are based on a

14   predicate finding of actual harm.  53 Cal.3d at 145-46.  Therefore, the penalties at issue in *Kizer* fell

15   outside the scope of the Tort Claims Act entirely:

16           Under the Long-Term Care, Health, Safety, and Security Act of 1973,
             the essential prerequisite to liability is a violation of some minimum
17           health or safety standard rather than 'injury' or 'damage.'
             Consequently, we do not believe that the Legislature intended the
18           immunity created by Government Code section 818 to apply to
             statutory civil penalties expressly designed to enforce minimum health
19           and safety standards.

20   *Id.* at 146; *see also* Reply at 11.  The Court pointed out that no harm was necessary to bring a

21   successful claim under the applicable Health and Safety Code provision; that such an action did not

22   sound in tort brought it outside the scope of the Tort Claims Act.

23           *Kizer's* reasoning thus distinguishes between any action sounding in tort–*i.e.*, an action

24   focused on harm to an individual–and an action under a statute such as the Long-Term Health Care

25   Act, which requires no showing of harm.  While Plaintiff contends that her claims are not similar to

26   tort actions, to make out a CDPA violation (even under the CDPA prong for violations of a state

27

28           [5]  The statute also created a private right of action should the state fail to act.

10

**United States District Court**
For the Northern District of California

1   building code), a plaintiff must demonstrate harm–*i.e.*, that she was denied access on a particular

2   occasion.   The monetary relief sought is based on compensation for the harm.   The character of her

3   CDPA claims thus sounds in tort.   *Kizer* is therefore inapposite.

4          Lastly, Plaintiff argues that § 844.6 does not release every claim in this case.   Specifically,

5   she argues that it ceased to confer immunity on Defendant the moment Plaintiff was no longer a

6   prisoner.   Section 844 defines prisoner as "an inmate of a prison, jail, or penal or correctional

7   facility.   For the purposes of this chapter, a lawfully arrested person who is brought into a law

8   enforcement facility for the purpose of being booked . . . becomes a prisoner, as a matter of law,

9   upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal

10  processes."   Cal. Govt. Code § 844.   Plaintiff argues that at least some of her claims stem from

11  events that occurred after she ceased being a prisoner.   In *Fearon v. Dept. of Corrections*, for

12  example, the California Court of Appeal held that a plaintiff was not barred from bringing a cause of

13  action for conversion when the incident occurred on the day he was released on parole and was

14  therefore no longer a prisoner.   162 Cal. App. 3d 1254, 1257 (1984) ("[A] person on the way to

15  prison and a parolee on the way out of prison are not prisoners and are not, therefore, barred from

16  bringing a tort action against a public entity.").   Similarly, once Plaintiff was released and leaving

17  jail, 844.6 would no longer apply.

18         The Court agrees that § 844.6, on its own, does not release all of her claims.   Plaintiff was

19  released from custody on April 18, 2007 at 4:00 am.   McGuinness Decl., Exh. E.   Any barriers she

20  encountered before that time are thus barred by defendant's immunity.[6]   *See Badiggo v. County of*

21  *Ventura*, 207 Cal. App. 3d 357, 361 (Cal. Ct. App. 1989) (holding that an inmate who fell down an

22  _____

23         [6] Plaintiff's attorney claims that "there is circumstantial evidence that plaintiff was released

24  on her own recognizance (OR) by the superior court on April 17, 2007."   McGuinness Decl., Docket
    No. 194 19.   In addition, Ms. McGuinness states, "[T]here is evidence that plaintiff's warrant for
    failure to appear on the petty theft was released at 6:44 p.m. on April 17, 2011."   *Id.* 20.   However,

25  as Defendant points out, Plaintiff appears to misread the record.   According to Exhibit E of Ms.
    McGuinness's declaration, plaintiff was released on one of her charges, CEN 7229577, at 6:44pm on

26  April 17, 2007.   That code correlates with California Vehicle Code § 14601.1(a), or driving with a
    suspended license.   *See* Reply at 6.   However, Exhibit E shows that Plaintiff was not released on her

27  second charge, CEN 7229579, until 4:00 am on April 18, 2007.   That code is for Penal Code §
    484/487, or petty theft.   Therefore, Plaintiff was not fully released from custody until April 18, 2007

28  at 4:00 am.   McGuinness Decl., Exh. E.

1   internal stairway on the way to check out for a work furlough program was a prisoner because "he

2   was still restrained and not permitted to leave the facility until he checked out at 11:30 p.m.").

3   However, any barriers encountered after her release would fall outside the immunity provisions of

4   844.6.  For example Plaintiff used the handrail and exit ramp on the outside of the prison (leading to

5   the BART station) when she had ceased being a prisoner.  Opp. to Mot. for SJ at 22.  Thus, any

6   claims relating to those facilities would not be covered under § 844.6.  Accordingly, the Court finds

7   that § 844.6 grants immunity to the County from Plaintiff's claims for damages to the extent that

8   they arise from her time as a prisoner.

9              b.    Govt. Code § 845.2

10       In the case at bar, any of Plaintiff's remaining claims against the County left untouched by §

11  844.6, however, are covered by § 845.2.  Government Code 845.2 states, "Except as provided in

12  Chapter 2 (commencing with Section 830), neither a public entity nor a public employee is liable for

13  failure to provide a prison, jail or penal or correctional facility or, if such facility is provided, for

14  failure to provide sufficient equipment, personnel or facilities therein."  Courts have applied the

15  statute to bar claims for inadequate security systems, *Taylor v. Buff*, 172 Cal. App. 3d 384 (1972),

16  insufficient personnel, *Estate of Abdollahi v. County of Sacramento*, 405 F. Supp. 2d 1194 (E.D.

17  Cal. 2005); *Silverbrand v. Woodford*, 2010 WL 3635780 (C.D. Cal. 2010), and failure to provide

18  programs, *Ashker v. Schwarzenegger*, 2009 WL 801557 (N.D. Cal. 2009).  Moreover, absolute

19  immunities such as § 845.2 "apply to both ministerial and discretionary acts." *Gates v. Superior*

20  *Court*, 32 Cal. App. 4th 481, 507 (Cal. Ct. App. 1995) (citing *Kisbey v. State of California*, 36

21  Cal.3d 415, 418-419 (1984); *County of Sacramento v. Superior Court*, 8 Cal.3d 479, 481-484

22  (1972)).

23       The Court agrees with Defendant that § 845.2 applies to claims for monetary damages in

24  situations like Plaintiff's in this case, in which the County allegedly failed to provide access to

25  certain facilities and equipment on a discriminatory basis.  In *Gates v. Superior Court*, *supra*, 32

26  Cal. App. 4th at 487, for example, the California Court of Appeal held that § 845 barred a claim of

27  intentional racial discrimination under the Unruh Civil Rights Act for the alleged "discriminatory

28  deployment of police officers during a riot."  The Court held that discrimination in the use of police

1  resources, even if intentional, did not abrogate the immunity from monetary damages granted by §

2  845 against liability "for failure to provide [any or] sufficient police protection service." *Id.* at 494;

3  *see also Ashker v. Schwarzenegger*, No. 05-3286, 2009 WL 801557, at *1, 24 (N.D. Cal. Mar. 25,

4  2009) (describing § 845.2 as barring "suit for failure to provide prison programs," and applying it to

5  bar plaintiffs' state law claims against the defendant for failing to provide access to programs that

6  were available to inmates housed in a different area).

7       Plaintiff's argument that § 845.2 does not preclude claims for discriminatory *policies* is

8  unavailing. Opp. to Mot. for SJ at 18-19. Section 845.2 immunity is not confined to physical

9  facilities-based claims. Indeed, many cases focus on the failure of a facility to implement policies

10  allowing inmates access to certain programs and services. *See Ashker v. Schwarzenegger*, No.

11  05-3286, 2009 WL 801557 (N.D. Cal. 2009) (no liability for denial of access to certain programs);

12  *Moore v. Baca*, No. 10-3552, 2002 WL 31870541 (C.D. Cal. 2002) (no liability for failure to

13  racially segregate inmates); *Gates v. Superior Court*, *supra*, 32 Cal. App. 4th at 487 (no liability for

14  failure to adequately train and deploy officers)). Therefore, this argument is unpersuasive.

15       Accordingly, between § 844.6 and § 845.2, all of Plaintiff's remaining claims for monetary

16  damages against the County are barred by statutory immunity. The Court therefore GRANTS

17  Defendant's motion for summary judgment.

18  B.   <u>Plaintiff's Motion for Leave to File Her First Amended Complaint</u>

19       Plaintiff filed a motion for leave to file her first amended complaint adding new defendants

20  on June 17, 2011. Docket No. 187. She argues that she should be granted leave to amend because,

21  until she received discovery, she mistakenly believed that the County was solely responsible for the

22  jail's policies relating to disabled prisoners. Mot. for Leave at 14. She also argues that amendment

23  would not prejudice the proposed new defendants because they have had notice of this action and

24  the Court has yet to set litigation deadlines or a trial date. *Id.* at 15. Defendant responds that

25  Plaintiff has unduly delayed filing her motion for leave because she had sufficient information to do

26  so at least a year ago, if not more. Opp. at 4-7. Furthermore, Defendant contends that amendment

27  would be futile because the new claims would not relate back and many would be barred by

28  statutory immunity or this Court's prior orders in this case. *Id.* at 7-14.

1    1.    Legal Standard

2        Rule 15(a) provides for liberal pleading standards, mandating that leave to amend "shall be

3   freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R.

4   Civ. P. 15(a)(2)).  The Ninth Circuit has interpreted this rule to mandate that leave to amend is "to

5   be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712

6   (9th Cir. 2001) (citation omitted).  The district court has discretion to deny a motion for leave to

7   amend, but it must provide some justification for that denial. *Foman*, 371 U.S. at 182.  "In

8   exercising its discretion, a court must be guided by the underlying purpose of Rule 15-to facilitate

9   decision on the merits, rather than on the pleadings or technicalities." *Eminence Capital, LLC v.*

10  *Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).  The four principle justifications a nonmoving

11  party can demonstrate in order to prevent leave to amend are "bad faith, undue delay, prejudice to

12  the opposing party, and futility of amendment." *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th

13  Cir. 1991).

14       Even if the Court grants leave to amend, Plaintiff's claims will nonetheless be time-barred

15  unless they relate back to the original complaint under Rule 15(c).  Rule 15(c) provides that an

16  amendment adding a new defendant will relate back to the original complaint if it "asserts a claim or

17  defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in

18  the original pleading," and if, within 120 days of the initial complaint, the party to be added

19  "received such notice of the action that it will not be prejudiced in defending on the merits" and

20  "knew or should have known that the action would have been brought against it, but for a mistake

21  concerning the proper party's identity."  Rule 15(c)(1)(C).

22       In contrast to the discretion afforded to the Court under 15(a), once the Court grants leave to

23  amend, relation back under 15(c) is mandatory if the party satisfies its criteria, regardless of whether

24  Plaintiff has been diligent.  *See Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485, 2496 (2010) ("As

25  the contrast between Rule 15(a) and Rule 15(c) makes clear, however, the speed with which a

26  plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so

27  has no bearing on whether the amended complaint relates back.").  Thus, technically Rule 15(c) only

28  comes into play once the Court grants leave to amend.  However, whether Plaintiff's amended

1  complaint would relate back remains relevant to the Court's determination as to whether amendment

2  would be futile.  Therefore, the Court addresses the relation back question in the context of the

3  futility analysis.

4       2.  <u>Plaintiff's Proposed Amendments</u>

5       Plaintiff's primary amendments are to add new defendants to the action.  Specifically, she

6  seeks to add: Gregory Ahern as an individual and as Sheriff of Alameda County; Lt. James Farr,

7  Deputy Sheriff; PHS (Prison Health Services) Correctional Healthcare, a for-profit business

8  contracting with the County to provide medical services to inmates; Melissa Brown, LVN, a nurse

9  and PHS employee; Martha Campos, M.D., a PHS employee; and Bill Wilson, M.D., a PHS

10  employee.  *See* Mot. for Leave at 3.  The proposed additional causes of action are:

> (1)  Damages under Civil Code § 54 (CDPA), against Gregory Ahern as an individual and as Sheriff of Alameda County, Lt. James Farr, PHS Correctional Healthcare, Melissa Brown, Martha Campos, and Bill Wilson;
> (2)  Injunctive relief and damages under Civil Code § 55 for violation of §§ 54 and 54.1, against Ahern, Farr, Wilson, and PHS;
> (3)  Injunctive relief and damages under Civil Code § 51, the Unruh Act, against PHS, Brown, Campos, and Wilson;
> (4)  Damages under the CDPA for violation of Title III of the ADA, against PHS, Brown, Campos, and Wilson; and
> (5)  Damages under Title II of the ADA, against Ahern, Farr, PHS, Brown, Campos, and Wilson.

18       Defendant argues that both undue delay and futility justify denying leave to amend.  The

19  Court will address each in turn.

20       3.  <u>Undue Delay</u>

21       A party seeking to amend its pleadings must explain any delay in seeking the amendment.

22  *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding that a

23  district court had not abused its discretion in denying leave to amend in part due to a two-year

24  delay).  A delay may be undue if the "moving party knew or should have known the facts and

25  theories raised by the amendment in the original complaint." *AmerisourceBergen Corp. v. Dialysist*

26  *West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).  However, while relevant, delay is typically "not alone

27  enough to support denial."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th

28  Cir. 1990).

1    In this case, Plaintiff has known of the additional defendants she seeks to add for over a year.

2    *See, e.g.*, Boley Decl., Docket No. 197-1 at 11 (excerpting Lt. Farr's deposition, in which he

3    affirmed that he was the person most knowledgeable regarding "accommodating disabled persons at

4    [the facilities] and [] providing defendant's programs, services and activities to mobility impaired

5    patients at" the jail); Opp. to Mot. for Leave at 1-2 (describing Plaintiff's knowledge of Dr. Campos,

6    Dr. Wilson, and PHS through Rule 26 disclosures in 2008); *id.* at 3 (describing Plaintiff's stated

7    concerns about "the policies set up by the sheriff" at an August 31, 2009 hearing).  Courts have

8    denied leave to amend after similar delays.  *See* Opp. at 4 (citing, *e.g.*, *Texaco, Inc. v. Ponsoldt*, 939

9    F.2d 794, 799 (9th Cir. 1991) (finding undue delay where plaintiff waited until eight months after

10   summary judgment and two years after filing initial complaint to move to amend)); *see also Jackson*

11   *v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Even accepting appellants' arguments that

12   they did not have all of the requisite facts until August 1987, did not fully analyze them until

13   October 1987, and added new attorneys to represent them, the delay in filing an amended complaint

14   from October 1987 to May 1988 is otherwise inexplicable and unjustified.").  Moreover, the Court

15   looks with particular suspicion at motions for leave filed after motions for summary judgment.  *See,*

16   *e.g.*, *Matsumoto v. Republic Ins. Co.*, 792 F.2d 869, 872-73 (9th Cir. 1986) ("Because the motion

17   was made after discovery had commenced and at the same time Blue Ridge moved for summary

18   judgment, we conclude that the district court did not abuse it discretion in denying leave to amend.")

19   (citations omitted); *Glesenkamp v. Nationwide Mut. Ins. Co.*, 71 F.R.D. 1, 4 (N.D. Cal. 1974) ("The

20   liberal amendment policy of the Federal Rules was not intended to allow a party to circumvent the

21   effects of summary judgment by amending the complaint every time a termination of the action

22   threatens.").  Plaintiff's delay coupled with her undisputed knowledge of the parties at an earlier

23   date renders her last-minute motion for leave suspect.

24   However, the Court declines to deny leave to amend on the grounds of delay alone because

25   Defendant fails to make a strong showing of prejudice.  The Ninth Circuit has stated that "it is the

26   consideration of prejudice to the opposing party that carries the greatest weight."  *Eminence Capital,*

27   *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The only argument Defendant makes

28   related to prejudice is that Plaintiff's amended complaint will necessitate new discovery and

exploration of new, undeveloped legal issues (*i.e.*, the standard of liability for an individual defendant under the CDPA).  *See* Opp. at 6.  However, Plaintiff's causes of action remain largely the same as in her initial complaint, with the exception of a new claim under Title III of the ADA.  In addition, the Ninth Circuit has noted that prejudice is especially unlikely where, as in this case, no trial date has been set.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987) ("Given that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [proposed defendant] would be prejudiced by the timing of the proposed amendment.").  Further, there is no incremental prejudice resulting from the delay – the additional litigation stems from the expansion of the claims and parties, not from the timing of their addition.  Therefore, the Court finds that Plaintiff's delay is insufficient to deny her leave to amend.

>    4.    Futility

Defendant argues further that it would be futile for Plaintiff to amend her complaint, thereby justifying a denial of Plaintiff's motion for leave.  *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995).  If it is "clear that the deficiency in [Plaintiff's] complaint could not have been overcome by amendment," the Court may deny leave to amend.  *Id.*  Defendant raises multiple reasons why amendment would be futile in this case.

>    a.    Rule 15(c)

First, as Plaintiff admits, the statute of limitations bars suits against the new defendants unless Plaintiff can demonstrate that the claims relate back to her original complaint under Rule 15(c).  As noted above, an amendment adding a new defendant will relate back to the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading," and, within 120 days, the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Rule 15(c)(1)(C).  The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference

17

United States District Court

For the Northern District of California

1  expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving

2  disputes on their merits." *Krupski v. Costa Crociere S. p. A.*,130 S. Ct. 2485, 2494 (2010).

3      As the Supreme Court recently affirmed, the relation back doctrine under Rule 15(c) is

4  appropriate in a case of mistaken identity. In *Krupski*, an injured plaintiff had originally sued Costa

5  Cruise Lines as the owner and operator of the cruise ship on which she was injured, but she later

6  discovered that the ship was actually owned by Costa Crociere S. p. A. 130 S. Ct. at 2494. The

7  operative question, according to the Court, is "what the prospective defendant knew or should have

8  known during the Rule 4(m) period [120 days], not what the plaintiff knew or should have known at

9  the time of filing her original complaint." *Id.* at 2493. If the proposed defendant knew or should

10  have known that its exclusion from the lawsuit was "only because of [Plaintiff's] misunderstanding,"

11  then it may properly be added. *Id.* at 2497. Thus, under the Supreme Court's test for relation back,

12  it is the *defendants'* knowledge which is central. It is not enough that the proposed defendants knew

13  they were subject to liability under the Complaint. Instead, they must have notice that they would be

14  named in the Complaint for the claims Plaintiff has asserted but for the fact that Plaintiff has made

15  an error. *See Krupski*, 130 S. Ct. at 2496.

16      "That a plaintiff knows of a party's existence does not preclude her from making a mistake

17  with respect to that party's identity." *Id.* at 2494. However, the Court cautioned that "making a

18  deliberate choice to sue one party instead of another while fully understanding the factual and legal

19  differences between the two parties is the antithesis of making a mistake concerning the proper

20  party's identity." *Id.* at 2494; *cf. Nelson v. Adams*, 529 U.S. 460, 467-68 (2000) (noting that Rule

21  15(c) did not apply because Respondent "knew of Nelson's role and existence and, until it moved to

22  amend its pleading, chose to assert its claim for costs and fees only against OCP "); *In re Network*

23  *Assoc., Inc. II Securities Litig.*, 2003 WL 24051280, at *8 (N.D. Cal. Mar. 25, 2003) ("Relation back

24  is only allowed for a mistake in identity, not liability.").

25      In this case, there is no question that the proposed claims arise out of the same occurrence as

26  the original complaint, and that the prospective defendants had notice of the litigation within the

27  120-day time period. *See* Opp. to Mot. for Leave at 8-12 (declining to argue that proposed

28  defendants did not have notice of the lawsuit). Thus, the question is whether the prospective

18

1    defendants had notice that their exclusion from the lawsuit was "only because of [Plaintiff's]

2    misunderstanding." *Krupski*, 130 S. Ct. at 2497.

3        With respect to proposed defendants Sheriff Ahern and Deputy Sheriff Farr, the Court finds

4    that there is no relation back because these defendants could not have known that their exclusion

5    from the lawsuit was the result of error rather than strategic calculation.  Both defendants have

6    publicly known roles with the County and their involvement in law enforcement policy is obvious.

7    Though Plaintiff argues that she was unaware of the extent of their involvement, *Krupski* requires

8    not just a *lack* of understanding, but a *mis*understanding by the Plaintiff.  *Id.* at 2497.  Furthermore,

9    it requires that the defendants *know* Plaintiff made a mistake.  Here, the complaint refers to

10   numerous purported County employees and policies created by those employees, yet names only the

11   County.  Given their public role with the County and the Plaintiff's presumptive knowledge of them,

12   Ahern and Farr did not have had notice within the Rule 4(m) period that Plaintiff made a mistake,

13   rather than simply a conscious choice, in failing to name them as defendants in her lawsuit.  *See*

14   *Krupski*, 130 S. Ct. at 2496 ("When the original complaint and the plaintiff's conduct compel the

15   conclusion that the failure to name the prospective defendant in the original complaint was the result

16   of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the

17   requirements of Rule 15(c)(1)(C)(ii) are not met.").  Accordingly, the Court finds that Plaintiff's

18   claims against Ahern and Farr do not relate back to her original complaint, and are thus futile.[7]

19       As for the PHS defendants, however, the Court finds that Plaintiff's claims would relate back

20   to the original complaint.  Unlike Ahern and Farr, these defendants' roles in County law

21   enforcement policies and the administration of the Santa Rita Jail would be unknown to someone in

22   Plaintiff's position.  *See* Mot. for Leave at 14.  More importantly, upon receipt of the complaint,

23   PHS and its employees reasonably knew that (1) Plaintiff was suing for violations arising out of the

24   development and implementation of the jail's policies and procedures regarding disabled persons,

25   including policies relating to her medical care and classification as a disabled inmate; and (2) they

26

27       [7]  Because the Court finds that any claims against Ahern and Farr do not relate back, the
     Court need not address Defendant's alternative argument that those claims would be barred by
28   statutory immunities.

United States District Court

For the Northern District of California

1    were responsible (at least in part) for the development and implementation of those policies and

2    procedures.  Plaintiff's error in believing the county rather than PHS and its employees were at fault

3    is plain from the first paragraph of her complaint.  *See* Compl., Docket No. 1, ¶ 1 ("This case

4    involves the denial of accessible policies and facilities to disabled persons detained at the Alameda

5    County Jail at Santa Rita, a facility *owned and operated by County of Alameda*."); *see also id.* ¶ 11

6    (describing "Alameda County's policies" that resulted in "defendant's failure to provide . . .

7    medication . . . and . . . mobility assistive devices"); *id.* ¶ 13 (describing nurses as employees of

8    Alameda County).  As in *Krupski*, here PHS and its employees had notice from the complaint that,

9    but for Plaintiff's mistake in identifying the correct parties, they would be named as defendants.[8]

10   Accordingly, the Court finds that the new claims against PHS, Brown, Campos, and Wilson relate

11   back to the original complaint.

12                          b.        Injunctive Relief

13         This Court has already ruled that Plaintiff has no Article III standing to assert claims for

14   injunctive relief.  *See* Docket Nos. 93, 105, 201.  Therefore, Plaintiff's claims for injunctive relief as

15   to the new defendants are futile.

16                          c.        Plaintiff's Remaining Claims Against PHS and Its Employees

17         With respect to Plaintiff's remaining claims against PHS and its employees, Defendant

18   makes no argument that these claims would be futile (apart from its claim that they cannot relate

19   back).  Indeed, as Defendant points out, the standard of liability for individual defendants under the

20   CDPA is unknown.  Therefore, the Court cannot conclude at this point that Plaintiff's amendments

21   would be clearly futile.  Accordingly, under the liberal pleading standards of Rule 15, the Court

22   exercises its discretion to GRANT Plaintiff leave to amend her complaint to add her proposed

23   damages claims against defendants PHS, Melissa Brown, Martha Campos, and Bill Wilson.

24

25   _____

26         [8]  Defendant erroneously focuses on Plaintiff's representations to the Court at an August 31, 2009 hearing.  *See* Opp. to Mot. for Leave at 2-3 (quoting Plaintiff's counsel answering no to the Court's question of whether she intended to make PHS or its employees a defendant).  However, that

27   is irrelevant to the relation back analysis.  Rather, the operative question is what the *defendants* knew within 120 days of the Complaint being filed.  Any subsequent representations during the

28   course of the litigation do no bear on this question.

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby grants Defendant Alameda's motion for summary judgment.  In addition, the Court grants in part and denies in part Plaintiff's Motion for Leave to File a First Amended Complaint.  Plaintiff is directed to file an Amended Complaint that complies with the terms of this Order (and not add new matters not addressed by this Order) by September 12, 2011, and serve it upon Defendants in accordance with the Federal Rules of Civil Procedure and the Local Rules.

This Court will hold a case management conference on October 7, 2011.  The parties are directed to file a joint case management statement by September 30, 2011.

This order disposes of Docket Nos. 176 and 187.


IT IS SO ORDERED.


Dated:  August 19, 2011

_____
EDWARD M. CHEN
United States District Judge