**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWNA WILKINS-JONES,

    Plaintiff,

    v.

COUNTY OF ALAMEDA, *et al.*,

    Defendants.
_____/

No. C-08-1485 EMC

**ORDER GRANTING DEFENDANTS'
MOTION FOR RELIEF FROM THE
COURT'S 8/19/11 ORDER; DENYING
PLAINTIFF'S MOTION TO STRIKE
MOTION FOR RELIEF; VACATING IN
PART THE COURT'S 8/19/11 ORDER;
AND DENYING PLAINTIFF'S MOTION
FOR LEAVE TO AMEND**

**(Docket Nos. 231, 233)**

## I.   INTRODUCTION

Plaintiff Shawna Wilkins-Jones filed suit against the County of Alameda ("County") on March 18, 2008, for violations of the California Disabled Persons Act ("CDPA") and the Americans with Disabilities Act ("ADA"). She alleged that she was denied access to jail policies and facilities for disabled persons when she was arrested and detained on April 13, 2007, for six days. Compl. ¶¶ 1-2. Judge Patel and, after reassignment, this Court granted summary judgment in favor the County as to all of Plaintiff's claims. *See* Docket Nos. 169, 204. On June 17, 2011, Plaintiff sought leave to amend to add Defendants Prison Health Services("PHS") (now known as Corizon), a for-profit business contracting with the County to provide medical services to inmates, and its employees Melissa Brown, Martha Campos, and Bill Wilson (collectively, the "Corizon Defendants"). On August 19, 2011, the Court granted such leave. *See* Docket No. 187 (Plaintiff's motion for leave to amend); Docket No. 204 ("August 2011 Order").

**United States District Court**
For the Northern District of California

1   Plaintiff filed her First Amended Complaint on September 12, 2011. The new Corizon

2   Defendants moved to dismiss Plaintiff's claims on November 30, 2011, pursuant to Rule 12(b) of

3   the Federal Rules of Civil Procedure. On March 14, 2012, the Court granted the Corizon

4   Defendants' motion to dismiss her ADA Title II claims and her Unruh Act claims to the extent they

5   were based on Title II. Docket No. 226. Those claims were dismissed with prejudice. The Court

6   granted the Corizon Defendants' motion to dismiss the Unruh Act claims not based on Title II

7   claims without prejudice, and denied the motion to dismiss the CDPA claims. Plaintiff filed her

8   Second Amended Complaint ("SAC") on April 13, 2012. Docket No. 230. On the same day, the

9   Corizon Defendants filed the pending Motion for Relief from the August 19, 2011 Order, or

10  Alternatively, for Leave to Seek Reconsideration. Docket No. 231. The Corizon Defendants'

11  motion for relief does not seek to dismiss Plaintiff's claims against them under Rule 12; rather, it

12  seeks relief from or reconsideration of the Court's order granting Plaintiff leave to amend to add the

13  Corizon Defendants as parties in this matter. On April 18, 2012, Plaintiff filed a Motion to Strike

14  Defendants' Motion for Relief. Docket No. 233. Both motions are currently pending before the

15  Court. Having considered the parties' submissions and oral argument, and for the reasons set forth

16  below, the Court **GRANTS** Defendants' motion for relief from its prior order, **VACATES** pages 13-

17  21 of its August 2011 Order, Docket No. 204, and **DENIES** Plaintiff's motion for leave to amend

18  her complaint to add the Corizon Defendants.

19              **II.    DISCUSSION**

20  A.    Motion to Strike or Stay

21              Plaintiff asserts three bases for her motion to strike Defendants' motion. First, she argues

22  that Defendants did not comply with the Local Rule requirements for Motions for Reconsideration

23  and Motions for Administrative Relief. Second, she argues that they do not have a basis for bringing

24  the motion under Federal Rules of Civil Procedure 54(b) or 60(b). Third, she argues in the

25  alternative that the Court should treat the motion as one for summary adjudication and stay

26  Defendants' motion under Rule 56(d) to allow Plaintiff to conduct discovery into Defendants'

27  factual allegations raised in their motion.

28

**United States District Court**
For the Northern District of California

1.   <u>Local Rules</u>

Plaintiff first argues that Defendants failed to comply with L.R. 7-9(a) because they failed to seek leave before filing the motion for reconsideration.  However, Defendants' motion for reconsideration was merely an alternative argument for their motion for relief under Federal Rules 54(b) or 60(b), which they filed under the 35-day notice period and procedures set forth in L.R. 7-1 *et seq*.  In addition, the alternative basis for the motion on the front-page heading clearly states that it seeks "leave to seek reconsideration."

In the instant case, it is not entirely clear whether Defendants' motion under 54(b) should have been filed pursuant to the L.R. 7-9 process for motions for reconsideration.   Although L.R. 7-9 cross-references 54(b), it is not clear that L.R. 7-9 would apply in the current scenario, because Defendants were not parties to the case at the time the Court entered the order from which they seek relief.  The only substantive differences between this procedural posture and that under L.R. 7-9 are that (1) typically the Court would decide the motion for leave before proceeding to the merits of the reconsideration argument; and (2) proceeding under the standard 35-day notice period has allowed Plaintiff more time and additional pages to fully oppose the motion on the merits than she would have received under L.R. 7-9.  Plaintiff does not articulate any prejudice or lack of notice from the current procedural posture.  Indeed, there can be no prejudice from allowing Plaintiff to respond to Defendants' arguments, rather than permitting the Court to consider the motion for leave by itself.  In addition, any issue with respect to the timing and extent of Plaintiffs' opportunity to respond has been resolved by the parties' stipulation (which the Court granted) setting a full briefing schedule for Defendants' motion, with which the parties have complied.  *See* Docket No. 241.  Thus, the Court does not find Plaintiff's arguments persuasive as a basis for striking Defendants' motion.

Second, Plaintiff argues that to the extent the motion is a motion for miscellaneous relief, Defendants failed to comply with the L.R. 7-11(a) requirements for length, proposed order and stipulation.  However, again Plaintiff identifies no prejudice from allowing both parties more time and additional pages in which to make their arguments. Accordingly, Plaintiff's arguments under the local rules present no basis for striking Defendants' motion.

2.      Rules 54(b) & 60(b)

Plaintiff next argues that Defendants may not proceed under Rules 54(b) or 60(b) because the Court's order was not a final order.

Plaintiff is correct that Rule 60(b) relates only to final orders or judgments. *See* Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ."); *see also Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("[A] preliminary injunction is not a 'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)."); Advisory Comm. Note to Fed. R. Civ. P. 60(b) ("The addition of the qualifying word 'final' emphasizes the character of the judgment, orders or proceedings from which Rule 60(b) affords relief; ... interlocutory judgments are not brought within the restrictions of the rule...."). Therefore, Rule 60(b) is inapplicable to Defendants' requested relief.

However, Rule 54(b) does not require final orders; indeed, it concerns primarily non-final orders. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities.") (emphasis added). Under Rule 54(b) "a district Court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments." *Am. Canoe Ass'n v. Murphy Farms, Inc* ., 326 F.3d 505, 514–15 (9th Cir. 2003).

Thus, Plaintiff offers no basis for striking Defendants' motion. Although Rule 60(b) is inapplicable, Rule 54(b) is an alternative basis for the motion. In addition, Plaintiff acknowledges that the Court has inherent authority to revisit its own orders. Opp., Docket No. 242, at 6 (citing *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)). Accordingly, the Court **DENIES** Plaintiff's motion to strike.

3.      Motion to Stay

Plaintiff next contends that Defendants' primary challenge to the Court's prior order is that it entered such order without a full view of the facts, which Defendants now present. Thus, if the

1   Court declines to strike the motion, Plaintiff requests discovery in order to contest some of

2   Defendants' facts now asserted, and that the Court treat Defendants' motion as one for summary

3   adjudication.  Rule 56(d) "was designed to ensure that a nonmoving party will not be forced to

4   defend a summary judgment motion without having an opportunity to marshal supporting evidence."

5   *Freeman v. ABC Legal Services Inc.*, 827 F. Supp. 2d 1065 (N.D. Cal. 2011) (citing *Rogers v. Home*

6   *Shopping Network, Inc.*, 57 F. Supp. 2d 973, 980 (C.D. Cal. 1999)).  It thus permits a plaintiff time

7   to "obtain affidavits or declarations to take discovery" if the plaintiff "shows by affidavit or

8   declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed.

9   R. Civ. P. 56(d).

10          In reviewing Rule 56(d) requests, courts "have wide latitude in controlling discovery, and

11   their rulings will not be overturned in the absence of a clear abuse of discretion." *Cal. ex rel. Cal.*

12   *Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998). However, in

13   order to prevail on a 56(d) motion for discovery, the Ninth Circuit requires that the moving party

14   show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery;

15   (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."

16   *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

17   As the Court noted in *Freeman*, courts may deny 56(d) requests when "plaintiffs failed to exercise

18   due diligence in conducting discovery, filed an untimely Rule 56(d) request, or failed to explain how

19   additional facts would oppose summary judgment."  827 F. Supp. 2d at 1065.

20          In the instant case, the Court finds that Plaintiff has failed to demonstrate any need for

21   further discovery in this matter.  The facts Defendants present largely consist of evidence already in

22   the record that the previous parties failed to bring to the Court's attention during the previous round

23   of briefing on Plaintiff's motion for leave to amend.  Indeed, the bulk of Defendants' arguments

24   concern express and implied representations *Plaintiff* made through her statements and course of

25   conduct in this litigation, and whether said conduct would cause prejudice to Defendants if Plaintiff

26   were permitted to reverse course; no further discovery is warranted to refute said arguments.

27   Moreover, Plaintiff primarily seeks discovery to refute Defendants' evidence and argument that her

28   claims do not relate back under Rule 15(c).  Because, as set forth below, the Court bases its order on

**United States District Court**

For the Northern District of California

1    Rule 15(a), no discovery is warranted on that issue.  Finally,  Plaintiff makes at best vague assertions

2    as to her need for discovery, falling far short of the standard set forth above in *Family Home*.  525

3    F.3d at 827.  Accordingly, the Court **DENIES** Plaintiff's Rule 56(d) request.

4    B.       Motion for Relief from August 2011 Order

5             Defendants' motion challenges two primary aspects of the Court's August 19, 2011 order,

6    which the Court entered before Defendants became parties to this action.  First, they challenge the

7    Court's decision allowing Plaintiff leave to file an amended complaint adding them as new

8    defendants.  *See* August 2011 Order at 13-21.  Second, they challenge the Court's conclusion that

9    Plaintiff's claims against the current Defendants would relate back to the original complaint for

10   statute of limitations purposes.  *See id.* at 17-20.  Because Defendants were not party to the action at

11   the time the Court entered its order, they focus largely on facts and arguments not previously

12   presented to the Court which, they contend, warrant revisiting the Court's prior order. Plaintiff

13   argues in response that Defendants have unduly delayed raising any arguments with respect to the

14   Court's order by failing to raise their motion until now, after they have already been parties in the

15   case for almost a year and have completed one round of motions to dismiss.  Plaintiff argues further

16   that Defendants' claims do not warrant revisiting the Court's prior order.

17            1.       Legal Standard

18            Rule 54(b) provides that "any order or other decision, however designated, that adjudicates

19   fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the

20   action as to any of the claims or parties and may be revised at any time before the entry of a

21   judgment adjudicating all the claims and all the parties' rights and liabilities." "The Ninth Circuit

22   has recognized that 'as long as a district court has jurisdiction over the case, then it possesses the

23   inherent procedural power to reconsider, rescind or modify any interlocutory order for cause seen by

24   it to be sufficient.'"  *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, CIV. 09-00181 DAE-KS,

25   2011 WL 1230144, at *9 (D. Haw. Mar. 28, 2011) (quoting *Santa Monica Baykeeper*, 254 F.3d at

26   889).  Further, "[a] district court may reconsider and revise a previous interlocutory decision for any

27   reason it deems sufficient, even in the absence of new evidence or an intervening change in or

28   clarification of controlling law." *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D.

United States District Court

For the Northern District of California

1    Cal. 2003) (citations omitted). *See Navajo Nation v. Confederated Tribes & Bands of the Yakima*

2    *Indian Nation*, 331 F.3d 1041, 1046 (9th Cir.2003) ("Whether or not to grant reconsideration is

3    committed to the sound discretion of the court.") (citing *Kona Enter., Inc. v. Estate of Bishop*, 229

4    F.3d 877, 883 (9th Cir. 2000)).

5              2.      <u>Timeliness & Diligence</u>

6              As a preliminary matter, Plaintiff argues that Defendants have unduly delayed seeking

7    reconsideration of the Court's August 2011 order for multiple reasons.

8              First, she states that Defendants received written notice of the initial motion for leave to

9    amend (which precipitated the August 2011 order) on June 20, 2011, when Plaintiff's counsel sent

10   Defendants' counsel a copy of the motion for leave and supporting documents.  Opp. at 6;

11   McGuinness Decl.  Ex. 4.  Plaintiff contends that Defendants could have sought to intervene under

12   Rule 24 before the Court ever issued its Order but chose not to do so.  Opp. at 6.  However, while

13   Defendants could have moved to intervene, they were not required to do so.  In addition, Defendants

14   point out that the individual Corizon defendants received no personal notice of the suit, and that, for

15   example, it took several months for counsel to locate Defendant Campos as she is no longer a

16   Corizon employee.  Thus, Defendants' failure to act when Plaintiff's motion was initially pending,

17   while they were not parties to the suit, does not render the instant motion untimely.  To the extent

18   Corizon itself had notice of the motion through its counsel, as noted above, it was not required to

19   intervene.

20             In addition, Plaintiff argues that Defendants failed to act diligently in seeking reconsideration

21   as this is not the first motion Defendants have filed in this litigation.  Instead, they first filed a

22   motion to dismiss Plaintiffs' claims on November 30, 2011, arguing, *inter alia*, that Plaintiff had

23   failed to state a claim for relief because Title II of the ADA does not apply to them, that the Unruh

24   Act does not apply to jails and Plaintiff had failed to allege necessary elements of such a claim, and

25   that Plaintiff had failed to allege a cognizable claim under the CDPA.  In the November 30, 2011

26   motion, Defendants raised the possibility that they might file a motion for reconsideration at some

27   point, but as the Court noted in its later order, they did not do so at that time.  *See* Order, Docket No.

28   226, at 4 ("Defendants state that they plan to file a motion for reconsideration of this Court's prior

ruling that Plaintiff's claims related back to her original complaint. *See* Mot. at 2; Order of August 19, 2011, Docket No. 204, at 13-20. However, Defendants have not actually filed such a motion, nor do they make any argument as to why the Court should reconsider its prior order. Accordingly, the Court declines to address any issue related to the statute of limitations as it has not been properly raised."). Instead, their first motion to dismiss brought in November, 2011 simply addressed the legal viability of Plaintiff's amended complaint against them under Rule 12, rather than her ability to file said complaint in the first place under Rule 15's provisions governing leave to amend. After the Court issued its order granting in part and denying in part Defendants' motion to dismiss on March 14, 2012, Defendants filed the instant motion on April 13, 2012.

Defendants respond that they "indicated their plans to file this motion in the November 29, 2011 Joint CMC statement." Reply at 14 (citing CMC Statement, Docket No. 215, at 5). In addition, they explain that they first filed "a motion to dismiss that they reasonably anticipated would eliminate all three claims." *Id.*

Although Defendants could have raised their motion sooner, there is no explicit time prescription for seeking reconsideration of a prior order under either Rule 54 or the Local Rules. Because the Corizon Defendants were not parties to this action at the time the Court entered its order granting Plaintiff leave to amend to add them as Defendants, and that order directly implicates their interests, the Court exercises its discretion to consider their motion on its merits.

### 3.   The Court's August 2011 Order

Defendants argue the Court should reverse its previous ruling granting Plaintiff leave to amend the complaint to add the Corizon Defendants under Rule 15(a). Defendant also argues the Court erred in holding Plaintiff's claims against Defendants were timely because they related back to her initial complaint filed on March 17, 2008 pursuant to Rule 15(c). Because the events giving rise to Plaintiff's causes of action took place in April 2007, the statute of limitations elapsed in April 2009 absent some form of tolling. This is not in dispute. Thus, if the Court were otherwise inclined to grant leave to amend under Rule 15(a), the issue of relation-back is pivotal to the timeliness of Plaintiff's claim against the Corizon Defendants.

**United States District Court**
For the Northern District of California

a.   Rule 15 – Legal Standard

The Court's Order described the legal standard as follows:

> Rule 15(a) provides for liberal pleading standards, mandating that leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)(2)). The Ninth Circuit has interpreted this rule to mandate that leave to amend is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citation omitted). The district court has discretion to deny a motion for leave to amend, but it must provide some justification for that denial. *Foman*, 371 U.S. at 182. "In exercising its discretion, a court must be guided by the underlying purpose of Rule 15-to facilitate decision on the merits, rather than on the pleadings or technicalities." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051-52 (9th Cir. 2003). The four principle justifications a nonmoving party can demonstrate in order to prevent leave to amend are "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991).
>
> Even if the Court grants leave to amend, Plaintiff's claims will nonetheless be time-barred unless they relate back to the original complaint under Rule 15(c). Rule 15(c) provides that an amendment adding a new defendant will relate back to the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading," and if, within 120 days of the initial complaint, the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Rule 15(c)(1)(C).
>
> In contrast to the discretion afforded to the Court under 15(a), once the Court grants leave to amend, relation back under 15(c) is mandatory if the party satisfies its criteria, regardless of whether Plaintiff has been diligent. *See Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485, 2496 (2010) ("As the contrast between Rule 15(a) and Rule 15(c) makes clear, however, the speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back."). Thus, technically Rule 15(c) only comes into play once the Court grants leave to amend. However, whether Plaintiff's amended complaint would relate back remains relevant to the Court's determination as to whether amendment would be futile. Therefore, the Court addresses the relation back question in the context of the futility analysis.

August 2011 Order at 14-15.

///

///

///

b.    Rule 15(a) Factors

The Court's prior Order focused largely on the undue delay and futility factors in assessing

whether to grant Plaintiff leave to amend under Rule 15(a).  First, with respect to undue delay, the

Court noted the following general principles:

> A party seeking to amend its pleadings must explain any delay in
> seeking the amendment.  *See Morongo Band of Mission Indians v.*
> *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding that a district court
> had not abused its discretion in denying leave to amend in part due to
> a two-year delay).  A delay may be undue if the "moving party knew
> or should have known the facts and theories raised by the amendment
> in the original complaint." *AmerisourceBergen Corp. v. Dialysist*
> *West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).  However, while
> relevant, delay is typically "not alone enough to support denial."
> *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th
> Cir. 1990).

August 2011 Order at 15.  Applying those principles, the Court found that Plaintiff had "known of

the additional defendants she seeks to add for over a year." *Id.*  Indeed, with respect to the Corizon

defendants, Plaintiff knew of their involvement much earlier, in 2008.  *Id.* at 16 (citing Opp. to Mot.

for Leave at 1-2 (describing Plaintiff's knowledge of Dr. Campos, Dr. Wilson, and PHS through

Rule 26 disclosures in 2008)).  The Court further concluded that such delays have been grounds for

other courts to deny leave to amend, particularly when a plaintiff seeks amendment after motions for

summary judgment. *Id.* at 16 (collecting cases).  Thus, the Court found that "Plaintiff's delay

coupled with her undisputed knowledge of the parties at an earlier date renders her last-minute

motion for leave suspect." *Id.*

However, despite the Court's reservations about the Plaintiff's long delay and the suspect

timing of her motion for leave to amend, the Court declined to deny leave to amend solely on that

basis.  Crucially, the Court found,

> [T]he Court declines to deny leave to amend on the grounds of delay
> alone *because Defendant fails to make a strong showing of prejudice.*
> The Ninth Circuit has stated that "it is the consideration of prejudice to
> the opposing party that carries the greatest weight." *Eminence*
> *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).
> The only argument Defendant makes related to prejudice is that
> Plaintiff's amended complaint will necessitate new discovery and
> exploration of new, undeveloped legal issues (*i.e.*, the standard of
> liability for an individual defendant under the CDPA).  *See* Opp. at 6.
> However, Plaintiff's causes of action remain largely the same as in her
> initial complaint, with the exception of a new claim under Title III of

United States District Court

For the Northern District of California

the ADA.  In addition, the Ninth Circuit has noted that prejudice is especially unlikely where, as in this case, no trial date has been set. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987) ("Given that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [proposed defendant] would be prejudiced by the timing of the proposed amendment.").  Further, *there is no incremental prejudice resulting from the delay* – the additional litigation stems from the expansion of the claims and parties, not from the timing of their addition.  Therefore, the Court finds that Plaintiff's delay is insufficient to deny her leave to amend.

August 2011 Order at 16-17 (emphases added).  Thus, in the absence of argument from the County, the Court found that the only "prejudice" was a need to litigate the case on the merits, and that there was no prejudice from the delay itself.

> i. <u>Prejudice</u>

The lack of prejudice was pivotal to this Court's ruling.  As noted above, the possibility of prejudice from amendment is the most important factor in the Rule 15(a) analysis.  *Eminence Capital*, 316 F.3d at 1052.[1]

Importantly, the Corizon Defendants (the parties sought to be added) were not parties to the suit and did not appear to oppose the motion.  Only the County Defendants opposed the motion.  Unlike the County Defendants, the current Corizon Defendants raise numerous strong objections on the issue of prejudice.

First, the Corizon Defendants performed almost none of the standard investigation they would have performed had they been named as parties in the original complaint, and the events in question have now occurred over 5 years ago.  Grigg Decl. ¶¶ 8-10.  For example, Defendants' attorneys had no detailed conversations with Defendant Brown, the intake nurse, until shortly before her deposition in June 2010, three years after the events in question.  *Id.* ¶ 9.  By then, Ms. Brown had no independent recollection of Plaintiff.  Brown Decl., Docket No. 149, ¶¶ 3-4.  Defendants similarly made no attempts to preserve documents, evidence, or witness recollections from the

---

[1]  The Court looks at prejudice not just to the opposing party at the time of the motion for leave to amend (*i.e.*, the County), but also to non-parties (*e.g.*, the Defendants who would be named if Plaintiff is permitted to amend).  *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1391 (9th Cir. 1990) (citing 6 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc.: Civil 2d § 1487, at 634 (1990) ("Possible prejudice resulting to a litigant other than the immediate adversary of the party seeking the amendment also may justify denying leave to amend.")).

United States District Court

For the Northern District of California

1    events in question.  Grigg Decl. ¶¶ 11-12.  Any relevant witnesses from Plaintiff's incarceration are

2    likely to be difficult to locate and, if located, unable to recall the events or Plaintiff in any reliable

3    detail. *Id.* ¶¶ 12-14.

4        Second, the County's previous depositions of Plaintiff and her physicians do not fully

5    address many of the topics relevant to the current Defendants, nor did the County depose certain

6    people Defendants would have deposed had they been named originally.  Grigg Decl. ¶ 16.

7        Third, Defendants argue that Plaintiff's initial complaint, and early litigation strategy,

8    focused largely on structural access issues with respect to the Santa Rita Jail.  Because such issues

9    are unrelated to the current Corizon Defendants and their conduct, and unrelated to Plaintiff's

10   current claims against them, Defendants argue that the County's response to Plaintiff's claims does

11   not mitigate any prejudice Defendants now suffer from Plaintiff's change in strategy.  Although the

12   Complaint fairly encompasses issues beyond structural access, the record supports Defendants'

13   argument that Plaintiff focused primarily on structural access barriers.  *See, e.g.*, May 17, 2010 Joint

14   CMC Statement, Docket No. 91, at 5 ("Physical barriers to access at the facilities is the main issue in

15   this case.").

16       Thus, unlike in the prior round of briefing before the Court, wherein the County made

17   virtually no argument regarding prejudice, here Defendants have offered specific ways in which they

18   will suffer prejudice by having to litigate this case after such a long and unwarranted delay.

19       Prejudice sufficient to warrant denying leave to amend can include, *e.g.*, the loss of evidence

20   and witnesses due to the delay.  *See* 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.) ("As a general rule,

21   the risk of substantial prejudice increases with the passage of time . . . [including] if the delay has

22   resulted in the loss of valuable evidence or an important witness has become unavailable."); *Isaac v.

23   Harvard Univ.*, 769 F.2d 817, 829 (1st Cir. 1985) (finding delay had caused prejudice sufficient to

24   warrant denial of leave to amend because "Harvard would have been required to develop evidence

25   of oral representations which occurred 13 years before Isaac's proposed amended complaint was

26   filed"); *Fuller v. Marx*, 724 F.2d 717, 721 (8th Cir. 1984) ("The effects of the passage of time,

27   which include faulty memories and missing witnesses, are particularly severe in this case [justifying

28   denial of relation back], where former prison inmates would have to be located and conversations

United States District Court

For the Northern District of California

held four years ago would have to be somehow remembered."); *see also Parker v. Shaw & Lines, LLC*, CV09-2003-PHX-JAT, 2010 WL 1640963 (D. Ariz. Apr. 20, 2010) ("It is axiomatic that, as time passes, it becomes harder for Defendants to defend the action as witnesses become unavailable and memories fade.") (citing *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (passage of time can prejudice a defendant)).

ii.   <u>Undue Delay</u>

Intertwined with the issue of prejudice, the Corizon Defendants also make stronger arguments regarding Plaintiff's undue delay that raise the specter of bad faith. For example, the Court previously noted, "[Plaintiff] argues that she should be granted leave to amend because, until she received discovery, she mistakenly believed that the County was solely responsible for the jail's policies relating to disabled prisoners." August 2011 Order at 13 (citing Mot. for Leave at 14). However, Defendants persuasively challenge such a contention and argue that they relied on Plaintiff's conduct indicating she was aware of any claims against them, but simply chose not to pursue them.

First, according to Corizon's records supervisor, Plaintiff's counsel faxed a request for medical records directly to Corizon on October 8, 2007. Gilbert Decl. ¶ 2. & Ex. A. In response, Corizon sent Plaintiff's counsel documents with the PHS Inc. logo. *Id.* Ex. B. These documents also contained the names of Defendants Brown and Campos. *Id.* ¶¶ 3-4. Thus, before Plaintiff filed suit, she knew at least the names of most of the relevant individual Defendants and the name of an entity (PHS, now Corizon) separate from the County.

Second, the Complaint refers to actions of the intake nurse, Compl. ¶ 13, but does not name her as a defendant, despite Plaintiff's knowledge of her name from the medical records. Nor does it name or refer to the nurse as a Doe defendant, to the extent Plaintiff was not certain of Ms. Brown's identity at the time.

Third, the Court's review of the Docket shows that the County's Answer clearly notified Plaintiff that some of the people with whom she had interacted were not County employees, and therefore that there may be other persons or entities against whom she could seek relief. *See* Answer, Docket No. 7, ¶ 12 ("Defendant denies that 'the intake nurse' is an employee of defendant

United States District Court
For the Northern District of California

1    County of Alameda.").  The County filed its Answer on April 16, 2008, less than one month after

2    Plaintiff filed her initial complaint. Accordingly, Plaintiff was on notice at least as of that point that

3    not all staff with whom she interacted were employees of the County.

4             Fourth, in the parties' July 28, 2008 CMC statement, the first CMC statement filed in this

5    action just after the 120-day mark had passed, the County specified that PHS staff, including the

6    intake nurse, were responsible for determining whether to prescribe reasonable accommodations for

7    Plaintiff, and stated explicitly that "this Defendant does not believe that liability rests on the County

8    of Alameda."  Docket No. 16 at 8-9.  Plaintiff also referred to "Santa Rita Jail officers" as distinct

9    from "Prison Health Services Staff," suggesting she understood the difference.  *Id.* at 10.

10            Fifth, the County's September 2008 disclosures to Plaintiff listed PHS and its employees as

11   knowledgeable about the instant action, and did not suggest that they were County employees or

12   entities.  *See* Docket No. 197.

13            Sixth, on August 24, 2009, Plaintiff specifically addressed the County's claim in a joint case

14   management statement that PHS was an indispensable party due to its contract with the County,

15   stating, "plaintiff still has no obligation to name PHS as a defendant because PHS is an agent of the

16   Sheriff, which has a non-delegable duty to its inmates."  Docket No. 44 at 9 (listing both the

17   County's and Plaintiff's positions).  Thus, Plaintiff specifically acknowledged the claim that PHS

18   might be liable based on some of her allegations, yet rejected the invitation to include them in the

19   litigation.  Indeed, on August 31, 2009, Plaintiff represented to the Court that she would not name

20   PHS or any of its employees as defendants because their claims against the County (*i.e.*, under Title

21   II) were not viable against them.  *See* Docket No. 60 at 4-5.  In addition, in response to further

22   probing from the Court as to how much Plaintiff's claims have "to do with the medical attention she

23   was or was not given, such as with respect to medications and so forth," Plaintiff's counsel

24   responded that "[t]he medical attention is relevant only in terms of what her damages were as an

25   individual."  *Id.* at 5.

26            Seventh, Ms. Brown testified that at her deposition on June 25, 2010, Plaintiff's counsel

27   assured Ms. Brown off the record that Plaintiff was not suing her.  Brown Decl. ¶ 8; Grigg Decl. ¶

28   5(bb).  Plaintiff does not refute this testimony.

**United States District Court**
For the Northern District of California

iii.   Conclusion

These facts now before the Court paint a much broader picture than that previously presented with respect to Plaintiff's knowledge and representations to the Court and opposing counsel regarding the claims she now asserts against the Corizon Defendants. Whereas the briefing before the Court on the original motion for leave to amend had identified only two of the points noted above (the County's initial disclosures and Plaintiff's 2009 statement to the Court), this more complete picture lends substantial credence to the Corizon Defendants' contention that Plaintiff unduly delayed raising her claims and caused Defendants to detrimentally rely on her statements of assurance and course of conduct. Indeed, given Plaintiff's consistent refusal to name Corizon despite both information and encouragement to do so, her sudden change after several years have passed appears simply to be an effort to avoid the negative consequences of her chosen strategy on the eve of summary judgment, rather than a diligent effort to correct an error. In fact, Plaintiff has never explained her lack of diligence and delay. She merely states that "[o]nly after discovery began did she learn of her error" in believing the County alone had authority to set ADA policy in the jail; she does not specify when in discovery she learned of the mistake and why she did not immediately seek leave at that point to amend. Opp. at 12.

More importantly, given the above record, the Corizon Defendants reasonably relied on Plaintiff's assurances (both express and implied) that she did not intend to sue them. Defendants' assumption that Plaintiff had simply chosen not to name them, and thus their failure to prepare for a litigation posture, was reasonable based on Plaintiff's conduct. This is especially true with respect to the individual defendants, whose compelled participation in this suit after many years (and Plaintiff's contrary representations to Ms. Brown) would be unjust and contrary to the principles underpinning Rule 15.

Accordingly, the Court is persuaded that its prior Order of August 19, 2011 granting Plaintiff leave to amend to add the Corizon Defendants after three years of litigation, and on the eve of summary judgment, was in error. With the more complete view of the facts and procedural history of this case now presented by the Corizon Defendants, the Court finds Plaintiff unduly delayed seeking to amend the complaint, waiting until she faced summary judgment from the County before

1    seeking to add the Corizon Defendants of whom she was aware early on.  Forcing Defendants to

2    litigate at this late date would cause substantial prejudice for the reasons set forth above.  The Court

3    therefore **GRANTS** Defendants' motion for relief from its order, **VACATES** pages 13-21 of the

4    Court's August 2011 Order, Docket No. 204, and **DENIES** Plaintiff leave to amend her complaint to

5    add the Corizon Defendants.

6                    c.    Futility & Rule 15(c)

7             Although the Court's above analysis provides sufficient basis to reconsider its prior Order

8    and deny leave to amend under Rule 15(a) based on undue delay and prejudice, Defendants also

9    challenge the Court's ruling that Plaintiff's claims would relate back to her original complaint.

10   Defendants argue that the claims should not relate back, and thus they are untimely, thereby

11   rendering any amendment futile.

12           The Court previously stated,

13               [A]s Plaintiff admits, the statute of limitations bars suits
                 against the new defendants unless Plaintiff can demonstrate that the
14               claims relate back to her original complaint under Rule 15(c).  As
                 noted above, an amendment adding a new defendant will relate back to
15               the original complaint if it "asserts a claim or defense that arose out of
                 the conduct, transaction, or occurrence set out-or attempted to be set
16               out-in the original pleading," and, within 120 days, the party to be
                 added "received such notice of the action that it will not be prejudiced
17               in defending on the merits" and "knew or should have known that the
                 action would have been brought against it, but for a mistake
18               concerning the proper party's identity."  Rule 15(c)(1)(C).  The
                 purpose of relation back is "to balance the interests of the defendant
19               protected by the statute of limitations with the preference expressed in
                 the Federal Rules of Civil Procedure in general, and Rule 15 in
20               particular, for resolving disputes on their merits."  *Krupski v. Costa
                 Crociere S. p. A.*,130 S. Ct. 2485, 2494 (2010).

21

22   August 2011 Order at 17.  Plaintiff has the burden of demonstrating the elements of relation back.

23   *See Sanders-Burns v. City Of Plano*, 594 F.3d 366, 373 (5th Cir. 2010) ("[F]or Sanders-Burns to

24   establish that the amended complaint relates back to the original complaint, she must demonstrate

25   that the amended pleading satisfies the elements provided in Rule 15(c)(1)(B)-(C)."); *Miguel v.*

26   *Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) (denying relation back because

27   "[t]here is no evidence in the record that the Bank had notice of the suit within the 120 day period

28

1    required by Rule 4(m)"); *Brooks v. ComUnity Lending, Inc.*, C 07-4501 JF (RS), 2009 WL 1513397,

2    at *4 (N.D. Cal. May 29, 2009) (placing burden on plaintiff).

3           Applying this standard to the instant case, the Court noted that there was no dispute that

4    Plaintiff's claims arose out of the same events as her initial claims, and thus the first element of

5    15(c) was satisfied. *Id.* at 18. Defendants do not contest that conclusion here. Importantly,

6    however, the Court also concluded in its August 19, 2011 order there was *no dispute* that the

7    proposed Defendants had notice of the action within 120 days of the complaint, *because the County*

8    *had failed to argue that issue*. *See id.* ("[T]here is no question . . . that the prospective defendants

9    had notice of the litigation within the 120-day time period. *See* Opp. to Mot. for Leave at 8-12

10   (declining to argue that proposed defendants did not have notice of the lawsuit).")). Thus, the Court

11   determined that only the third element was in question, whether the proposed Defendants knew that

12   Plaintiff had failed to name them by mistake.

13                    i.    <u>Notice</u>

14          Unlike the County, the Corizon Defendants vigorously dispute Plaintiff's assertion that they

15   received notice of the original complaint within 120 days. As noted above, Rule 15(c)(1)(C)

16   requires that "within the period provided by Rule 4(m) for serving the summons and complaint, the

17   party to be brought in by amendment . . . received such notice of the action that it will not be

18   prejudiced in defending on the merits."

19          In the first round of briefing, the only facts Plaintiff asserted with respect to notice were (a)

20   that Corizon received notice of Plaintiff's Government Claim in late 2007; and (b) that Corizon

21   participated in discovery. *See* Mot. for Leave, Docket No. 187, at 8. Because the County did not

22   contest notice in its opposition to Plaintiff's motion for leave, the Court did not examine the

23   standards for notice at any level of detail. However, in light of the current Defendants' challenge to

24   notice, the Court now finds Plaintiff failed to provide an adequate showing of notice.

25          First, notice of the Government Claim is irrelevant for relation back purposes because "the

26   filing of an administrative claim does not impute notice of 'the institution of the action'-which is the

27   only notice relevant to rule 15(c)." *Cooper v. U.S. Postal Serv.*, 740 F.2d 714, 717 (9th Cir. 1984),

28   *overruled on other grounds as recognized by Capital Tracing, Inc. v. United States*, 63 F.3d 859,

United States District Court
For the Northern District of California

861 n.4 (9th Cir. 1995); *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 n.3 (9th Cir. 1994) (stating same rule); *Brown v. TA Operating LLC*, 3:07-CV-308-ECR-VPC, 2009 WL 1846821, at *3 (D. Nev. June 24, 2009) (distinguishing *Cooper* because proposed party had "received actual notice from a lessee that an action was pending").

Second, Plaintiff's contention that Defendants participated in discovery is not sufficient to demonstrate notice, because their participation in discovery that occurred in 2010 does not show that they had notice of the action *within 120 days of its filing* a required by Rule 15(c)(1)(C). Grigg Decl. ¶ 7 (describing Corizon counsel's involvement in discovery in 2010). Nor did Plaintiff provide any specific dates that would point to Defendants' notice within the 120-day time period.

In opposition to Defendants' current motion, Plaintiff attempts to impute knowledge on Defendants by providing the Court with a contract between Corizon and the County, in which Corizon is required to indemnify the County against any actions arising from PHS's conduct, and the County is required to give Corizon notice of any such actions filed. *See* McGuinness Decl. Ex. 3, at 27. However, Plaintiff merely assumes from this contract that "[i]t is unreasonable to believe the County believed PHS was liable and knew itself entitled to a free defense from PHS, yet did not timely inform PHS of its duty to defend." Opp. at 13. Plaintiff offers no actual evidence of notice, nor does she offer any authority to support the proposition that it is sufficient to merely show the reasonable likelihood of notice, rather than actual notice. *Cf. Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009) (finding notice sufficient where "DCAG received a letter, attaching a copy of the amended complaint, on March 6, 2006. That transmittal informed it not only of the nature of the claims but also of the pendency of the suit"). Nor does she argue that Defendants satisfy the Ninth Circuit's "community of interests" test so as to impute the County's knowledge to the Corizon Defendants. *See, e.g.*, *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1401 (9th Cir. 1984) (finding, based on the factual record, there was "a sufficient community of interest between RCCL Inc. (the general sales agent), RCCL A/S (the owner of the ship), Port Cruise Services, Inc. (the operating agent for both the ship and RCCL A/S), and CMA (the insurance company who handled personal injury claims against the cruise line for Port Cruise Services, Inc.),

United States District Court

For the Northern District of California

1  from which to impute knowledge of the claim and of the lawsuit to RCCL A/S within the relevant

2  time period").

3       In addition, the individual Defendants have offered sworn affidavits denying any actual

4  notice within the requisite time period.  *See* Brown Decl. ¶¶ 4-5 (denying receiving any notice of the

5  action until at least December 2009); Campos Decl. ¶ 3 (stating she had no idea of lawsuit's

6  existence until December 2011); Wilson Decl. ¶ 5 (denying any notice of Plaintiff's action prior to

7  March 2012).  Such declarations have been held sufficient to deny leave to amend in other cases.

8  *See, e.g.*, *Fugate v. Borg Textile Corp.*, 679 F. Supp. 599, 601 (S.D. W. Va. 1988), *aff'd*, 881 F.2d

9  1069 (4th Cir. 1989) (accepting affidavits of entity's Secretary/Treasurer attesting to lack of notice);

10  *Swiss v. Eli Lilly & Co.*, 559 F. Supp. 621, 626 (D.R.I. 1982) (accepting undisputed affidavit

11  attesting that defendant had no prior knowledge of the action).

12       Corizon's notice as an entity offers a somewhat closer call as it does not explicitly deny

13  notice of the action; rather, its representatives focus on whether they had knowledge that Plaintiff

14  made a mistake in failing to name them (discussed below).  However, it is Plaintiff's burden to show

15  relation back; she failed to carry her burden of proving any Corizon Defendant had notice of the

16  action within the 120-day time frame as required by Rule 15(c)(1)(C).[2]

17       In addition to the pure evidentiary question of whether Defendants received notice of the

18  action within the requisite time period, Rule 15(c) requires that Defendants receive "such notice of

19  the action that it will not be prejudiced in defending on the merits."  As the Seventh Circuit has

20  recently clarified post-*Krupski*, "The fact that the plaintiff was careless in failing to discover his

21  mistake is *relevant* to a defendant's claim of prejudice; the longer the delay in amending the

22  _____

23       [2] To the extent Plaintiff seeks to argue that any notice to Corizon should be imputed to the
     individual employees, she offers no support or argument for such claim, and available case law
24   suggests such knowledge is not necessarily imputed; instead, it is a case-specific inquiry.  *See, e.g.*,
     *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 853 (D. Ariz. 1999) ("If the proposed new defendants
25   have an identity of interest with the named defendant, notice will be imputed to the former. . . .
     Fayazi shares an identity of interest with First Credit because he is the sole owner and president of
26   the corporation.") (citing, *e.g.*, *Korn*, 724 F.2d at 1401).  Imputed notice seems especially
     troublesome with respect to Dr. Campos, who was no longer employed with Corizon at the time
27   Plaintiff filed her complaint.  *See* Campos Decl. ¶ 1 (stating that she was employed by PHS until
     August 2007).  In any event, Plaintiff offers no evidence or argument to enable the Court to make a
28   judgment as to the individual defendants' potential imputed notice in this case.

1    complaint was, the likelier the new defendant is to have been placed at a disadvantage in the

2    litigation. But carelessness is no longer a ground independent of prejudice for refusing to allow

3    relation back." *Joseph v. Elan Motorsports Technologies Racing Corp.*, 638 F.3d 555, 560 (7th Cir.

4    2011) (emphasis in original), *reh'g denied* (Mar. 31, 2011).  In this case, as noted above, Defendants

5    have identified multiple reasons why they would be prejudiced as a result of the delay.  In view of

6    the lack of evidence that they had appropriate notice, their failure to investigate and secure evidence

7    to mount a defense was reasonable; they acted in reasonable reliance on their own lack of

8    information and, later, on Plaintiff's words and conduct indicating that she would not sue them. *Cf.*

9    *id.* at 561 ("Elan Inc., if it had promptly disabused Wardrop of his mistake and he had amended his

10   complaint forthwith, would have suffered no harm from delay in the amending of the complaint

11   because there wouldn't have been any delay. It brought on itself any harm it has suffered from delay,

12   and can't be allowed to gain an advantage from doing that.").

13        Accordingly, based on the new argument before the Court, Plaintiff did not meet her burden

14   of showing that Defendants had notice of her original complaint within 120 days, as required for

15   relation back, and that they had such notice as to prevent them from being prejudiced in defending

16   the litigation at this point. Plaintiff's failure to meet her burden of demonstrating "such notice of the

17   action that [Defendants] will not be prejudiced in defending on the merits" offers an additional

18   independent basis for reconsidering the Court's prior order and denying leave to amend.  Fed. R.

19   Civ. P. 15(c).

20                                  ii.    Lack of Mistake & Knowledge of Mistake

21        In addition, Defendants produce additional evidence and argument to challenge the Court's

22   prior finding that they had knowledge of Plaintiff's mistake, even assuming they had notice of the

23   action.  Specifically, they challenge the notion that Plaintiff made a mistake at all, rather than a

24   tactical decision not to name them.  And, even assuming she made a mistake, they challenge the

25   conclusion that they had any reasonable knowledge of her mistake.

26        The Court previously stated the following with regard to the mistake element of relation

27   back:

28

As the Supreme Court recently affirmed, the relation back doctrine under Rule 15(c) is appropriate in a case of mistaken identity. In *Krupski*, an injured plaintiff had originally sued Costa Cruise Lines as the owner and operator of the cruise ship on which she was injured, but she later discovered that the ship was actually owned by Costa Crociere S. p. A. 130 S. Ct. at 2494. The operative question, according to the Court, is "what the prospective defendant knew or should have known during the Rule 4(m) period [120 days], not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.* at 2493. If the proposed defendant knew or should have known that its exclusion from the lawsuit was "only because of [Plaintiff's] misunderstanding," then it may properly be added. *Id.* at 2497. Thus, under the Supreme Court's test for relation back, it is the *defendants'* knowledge which is central. It is not enough that the proposed defendants knew they were subject to liability under the Complaint. Instead, they must have notice that they would be named in the Complaint for the claims Plaintiff has asserted but for the fact that Plaintiff has made an error. *See Krupski*, 130 S. Ct. at 2496.

"That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Id.* at 2494. However, the Court cautioned that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id.* at 2494; *cf. Nelson v. Adams*, 529 U.S. 460, 467-68 (2000) (noting that Rule 15(c) did not apply because Respondent "knew of Nelson's role and existence and, until it moved to amend its pleading, chose to assert its claim for costs and fees only against OCP "; *In re Network Assoc., Inc. II Securities Litig*., 2003 WL 24051280, at *8 (N.D. Cal. Mar. 25, 2003) ("Relation back is only allowed for a mistake in identity, not liability.").

August 2011 Order at 18.

Applying these principles to the instant case, the Court concluded first that Plaintiff's claims with respect to Sheriff Ahern and Deputy Sheriff Farr did not relate back because, due to their "publicly known roles with the County and their involvement in law enforcement policy," "these defendants could not have known that their exclusion from the lawsuit was the result of error rather than strategic calculation." *Id.* at 19. In contrast, the Court found that Plaintiff's claims against the Corizon Defendants would relate back because:

Unlike Ahern and Farr, these defendants' roles in County law enforcement policies and the administration of the Santa Rita Jail would be unknown to someone in Plaintiff's position. *See* Mot. for Leave at 14. More importantly, upon receipt of the complaint, PHS and its employees reasonably knew that (1) Plaintiff was suing for violations arising out of the development and implementation of the jail's policies and procedures regarding disabled persons, including

United States District Court
For the Northern District of California

policies relating to her medical care and classification as a disabled inmate; and (2) they were responsible (at least in part) for the development and implementation of those policies and procedures. Plaintiff's error in believing the county rather than PHS and its employees were at fault is plain from the first paragraph of her complaint. *See* Compl., Docket No. 1, ¶ 1 ("This case involves the denial of accessible policies and facilities to disabled persons detained at the Alameda County Jail at Santa Rita, a facility *owned and operated by County of Alameda*."); *see also id.* ¶ 11 (describing "Alameda County's policies" that resulted in "defendant's failure to provide . . . medication . . . and . . . mobility assistive devices"); *id.* ¶ 13 (describing nurses as employees of Alameda County). As in *Krupski*, here PHS and its employees had notice from the complaint that, but for Plaintiff's mistake in identifying the correct parties, they would be named as defendants. Accordingly, the Court finds that the new claims against PHS, Brown, Campos, and Wilson relate back to the original complaint.

August 2011 Order at 19-20. The Court also noted that the County's focus on Plaintiff's representations to the Court at an August 31, 2009 hearing was "irrelevant" because "the operative question is what the *defendants* knew within 120 days of the Complaint being filed." *Id.* at 20 n.8.

However, with the more complete picture described above of Plaintiff's conduct before and after initiating the litigation, the Court's prior conclusion that Plaintiff made a mistake as to the Corizon Defendants' roles warrants reconsideration. It is difficult to see how Defendants knew of her mistake, assuming she made one.

First, with respect to whether Plaintiff made a mistake, Plaintiff challenges Defendants' reference to any information available to her as irrelevant under *Krupski*'s mandate that "[i]nformation in the plaintiff's possession is relevant only if it bears on the *defendant's understanding* of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski*, 130 S. Ct. at 2493-94 (emphasis added). However, subsequent cases construing *Krupski* have confirmed that *Krupski* did not eliminate all inquiries into whether the plaintiff in fact committed a mistake; rather, it simply focused on the standard for the defendants' knowledge of said mistake, *assuming such a mistake had occurred. See Lelieve v. Orosa*, 10-23677-CIV, 2011 WL 5103949 (S.D. Fla. Oct. 27, 2011) ("Without a mistake, the proposed Defendants' knowledge is irrelevant.") (discussing *Krupski* and finding that its analysis only comes into play once a mistake has occurred); *Dominguez v. City of New York*, 10 CIV 2620 BMC, 2010 WL 3419677 (E.D.N.Y. Aug. 27, 2010) ("*Krupski* assumes the presence of a mistake and asks whether it is covered by Rule

**United States District Court**
For the Northern District of California

1   15(c)(1)(C)(ii).”); *Pierce v. City of Chicago*, 2010 WL 4636676, at *2 (N.D. Ill Nov. 8, 2010)

2   (“Establishing the existence of a mistake is a threshold requirement in a 15(c)(1) inquiry, and is

3   independent of the determination of whether the party to be brought in had knowledge of the

4   action.”).

5          Indeed, even *Krupski* acknowledged that “[w]hen the original complaint *and the plaintiff's*

6   *conduct* compel the conclusion that the failure to name the prospective defendant in the original

7   complaint was the result of a fully informed decision as opposed to a mistake concerning the proper

8   defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met.”  *Krupski*, 130 S. Ct. at

9   2496 (emphasis added) (citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 463-64, 467 (2000)); *see*

10  *also In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1000 (N.D. Cal. 2009) (“[I]f a plaintiff is

11  aware of the potential defendant's identity at the time the original complaint is filed, but is uncertain

12  whether the potential defendant may be found liable, amendment is not allowed to defeat the statute

13  of limitations. Similarly, if the plaintiff learns of the defendant within the limitations period, but

14  seeks to add the defendant only after the period has expired, amendment is not allowed.”) (quoting

15  *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1041 (N.D. Cal. 2009)).

16         Thus, Plaintiff's course of conduct as described above is relevant to the question of whether

17  she in fact made a mistake rather than simply a tactical decision.  As already noted, the evidence

18  supports the conclusion that she made a conscious, reasoned choice not to sue the Corizon

19  Defendants.  At best, Plaintiff (and her counsel) may have made an error in legal judgment as to the

20  Defendants' liability, but such an error is not the same as a mistake about the parties' respective

21  roles.  *See, e.g.*, *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1144 (N.D. Cal. 2010)

22  (“Even assuming that Ruiz was not *aware* of the Countrywide Defendants' potential liability for

23  alleged violations of TILA, lack of knowledge is not a mistake of the kind required by Rule

24  15(c)(1)(C)(ii).”) (emphasis in original).  Plaintiff's choice not to name the Corizon Defendants

25  provides an independent basis for denying relation back.

26         As for Defendants' knowledge of any mistake, assuming they had full notice of the action,

27  they would have known that Plaintiff sought and received medical records from PHS prior to filing

28  her complaint; those records identified PHS as a separate entity from the County.  Defendants would

1    also have had notice of the County's Answer, which denied that the intake nurse identified in

2    Plaintiff's complaint was an employee of the County.  Thus, Defendants would have reasonably

3    believed that Plaintiff was aware of the respective roles of Corizon and the County, and thus had

4    reason to believe that the decision not to sue Corizon was deliberate and strategic rather than a

5    mistake.  Indeed, while just a few days outside the 120-day period, the parties' initial case

6    management statement in 2008 further confirm this interpretation of Plaintiff's conduct, as the

7    County explicitly stated PHS was responsible for certain aspects of Plaintiff's claims, yet Plaintiff

8    chose not to sue them.  Plaintiff did not contend otherwise.  In view of this complete record, Plaintiff

9    fails to demonstrate that Defendants knew her failure to name them was a mistake.

10            Finally, Defendants argue that the posture of this case indicates that Plaintiff's failure to

11   name them, even if a mistake, was not the sort that would put them on notice because the County

12   was not a *mis-named* Defendant.  Rather, Plaintiff asserted multiple viable (though ultimately

13   unsuccessful) claims against the County.  The Court acknowledges that most courts favor a flexible

14   interpretation of Rule 15(c) that allows for party additions as well as substitutions, *see, e.g.*, 6A Fed.

15   Prac. & Proc. Civ. § 1498.2 (3d ed.); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007);

16   *Meredith v. United Air Lines*, 41 F.R.D. 34, 39 (S.D. Cal. 1966)).  Nonetheless, in this case,

17   Plaintiff's complaint against the County was not obviously *incorrect*, but merely (arguably)

18   *incomplete*.  This lends further credence to Defendants' argument that they could not have

19   reasonably known Plaintiff failed to name them in error, rather than by choice.  Unlike in *Krupski*, in

20   which the plaintiff named a party that had no liability instead of the correct defendant, thus

21   rendering the mistake obvious, here Plaintiff named a defendant (the County) that unquestionably

22   faced at least potential liability for Plaintiff's claims.  There was no obvious mistake.  That Plaintiff

23   could have also asserted claims against the Corizon Defendants but failed to do so was not an

24   obvious mistake as in *Krupski*.

25            Accordingly, the Court agrees with the Corizon Defendants that Plaintiff has not shown these

26   Defendants had reasonable knowledge that she committed a mistake in failing to name them.

27   Plaintiff's failure to sustain her burden under Rule 15(c) provides an additional independent basis to

28   deny Plaintiff's motion for leave to amend on reconsideration.

**United States District Court**
For the Northern District of California

1

### III.   <u>CONCLUSION</u>

2        For the foregoing reasons, the Court **GRANTS** Defendants' motion for relief from its prior

3   order, **VACATES** pages 13-21 of its August 2011 Order, Docket No. 204, and **DENIES** Plaintiff's

4   motion for leave to amend her complaint to add the Corizon Defendants.  Because Plaintiff's claims

5   against the County have already been resolved, this Order disposes of all of Plaintiff's remaining

6   claims.  Accordingly, the Clerk is directed to close the file.

7        This Order disposes of Docket Nos. 231, 233.

8

9        IT IS SO ORDERED.

10

11   Dated:  July 31, 2012

12

13                                                          _____
                                                            EDWARD M. CHEN

14                                                          United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25